Meister Seelig & Fein LLP
Attorney for Defendant
Xethanol Corporation
By: Howard S. Koh
140 East 45th Street, 19th Floor
New York, New York 10017
Tel. No. (212) 655-3500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

XETHANOL CORPORATION,

               Plaintiff,

                                                                   **Case No. 07 CV 11161 (AKH)**

       -against-

DEUTSCHE BANK SECURITIES, INC.,
PIVOT MASTER TRUST, and
CAMBER MASTER TRUST,

               Defendants.
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION
TO DEUTSCHE BANK SECURITIES, INC.'S MOTION
TO DISMISS THE ORIGINAL COMPLAINT**

**Meister Seelig & Fein LLP**
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3500

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 4

CONCLUSION ...................................................................................................................... 7

# TABLE OF AUTHORITIES

## Cases

Bell Atlantic Corp. v. Twombly
    127 S. Ct. 1955 (2007)..................................................................4, 5

Conley v. Gibson
    355 U.SA. 34 (1957)......................................................................5

Erickson v. Pardus
    127 S. Ct. 2197 (2007)...................................................................5

Forman v. Davis
    371 U.S. 178 (1957).......................................................................7

Iqbal v. Hasty
    490 F.3d 143 (2nd Cir. 2007).........................................................4, 5

Pinter v. Dahl
    486 U.S. 622 (1988).......................................................................7

Scheuer v. Rhodes
    416 U.S. 232 (1974).......................................................................5

## Statutes and Rules

Federal Rules and Civil Procedures 8(a)(2).................................................5

Federal Rules and Civil Procedures 8(a)(3).................................................6

Federal Rules and Civil Procedures 15(a)(1)...............................................1

Federal Rules and Civil Procedures 15(a)(1)(A).........................................4

Federal Rules and Civil Procedures 15(a)(2)...............................................7

Securities Act of 1933 §5 (15 U.S.C. §77(e)).............................................3

Securities Act of 1933 Section 12(a)(1), 15 U.S.C §77 l(a)(1).............1, 2, 7

Securities Exchange Act of 1934 Section 10(b), 15 U.S.C. §78 j(b).........2

SEC Rule 10b-5, 17 C.F.R. §240.10b-5 .....................................................2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
XETHANOL CORPORATION,

                   Plaintiff,                            Case No. 07 CV 11161 (AKH)

           -against-

DEUTSCHE BANK SECURITIES, INC.,
PIVOT MASTER TRUST, and
CAMBER MASTER TRUST,

                   Defendants.
------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEUTSCHE BANK SECURITIES, INC.'S MOTION TO DISMISS THE ORIGINAL COMPLAINT

Plaintiff, Xethanol Corporation ("Xethanol") submits this Memorandum of Law in opposition to defendant, Deutsche Bank Securities, Inc.'s ("DB's") Motion to dismiss Xethanol's original Complaint in this action.

### Preliminary Statement

On December 12, 2007, Xethanol, an alternative energy company, commenced this action against DB alleging a single claim – violation of section 12(a)(1) of the Securities Act of 1933 (the "12(a)(1) claim"). After obtaining Xethanol's agreement to extend its time to respond to the Complaint, DB served a motion to dismiss the Complaint on January 25, 2007. In response, after reviewing DB's motion to dismiss, Xethanol served and filed, as was its right pursuant to Fed. R. Civ. P. 15(a)(1) an Amended Complaint.[1]

---

[1] For the convenience of the Court, a Copy of the Amended Complaint is attached as Exhibit A to the accompanying Declaration of Howard S. Koh ("Koh Dec."). A copy of the original Complaint is attached to the Koh Dec. as Exhibit B.

The Amended Complaint adds two additional defendants, Pivot Master Trust and Camber Master Trusts and adds two causes of action against all of the defendants named in the Amended Complaint; a claim under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (the "10b-5 claim") and a claim of common law fraud (the "Fraud claim"). Upon serving the Amended Complaint Xethanol requested that DB withdraw its motion to dismiss the original complaint, without prejudice to any motion Xethanol might wish to make against the Amended Complaint. DB, however, rejected this proposal which would have saved the Court's time and Xethanol's legal costs, and insisted that Xethanol oppose DB's motion to dismiss the original Complaint.

Given this procedural posture, it is clear that even if DB were to be entirely successful on its motion to dismiss Xethanol's claim under Section 12(a)(1) of the Securities Act – and as we show below, in light of the Amended Complaint - DB cannot be successful, this action would still continue in this Court against the Pivot Master Trust and Camber Master Trust, which were named as new defendants in the Amended Complaint and the action would still continue against DB because DB has not, as of the filing of this opposition, moved against Xethanol's 10b-5 claim or its fraud claim. Simply put, there is no predicate motion for dismissing DB from this action, as now pled, that is pending before this Court.

The Amended Complaint also addresses the purported defects in Xethanol's 12(a)(1) claim that DB identified in its motion to dismiss, and accordingly, this Court should not dismiss Xethanol's 12(a)(1) claim. Reduced to its core, DB's argument in its motion to dismiss is that Plaintiff failed to allege one of the following two facts, which

DB contends are crucial to Xethanol's 12(a)(1) claim: either that DB was not in privity with and did not sell any security to Xethanol[2]; or that DB did not solicit Xethanol.[3] The Amended Complaint directly addresses these purported defects.

The Amended Complaint alleges that DB sold to Xethanol certain Auction Rate Securities know as Pivot-1 and Camber -8 (Pivot-1 and Camber-8 are referred to herein collectively as the "ARS") without registering them with the Securities Exchange Commission as required by Section 5 of the Securities Act of the 1933 (the "Securities Act") and without a valid exemption from registration.[4] The allegation that DB sold the ARS to Xethanol appears in at least six separate paragraphs of the Amended Complaint. These paragraphs include:

- Amended Complaint ¶ 2 ("DB was the underwriter of, and sold to Plaintiff . . . .");

- Amended Complaint ¶ 8 ("Defendants sold Xethanol the ARS. . . .");

- Amended Complaint ¶ 20 ("DB acquired the ARS and offered the ARS for sale to the public as the sole underwriter.");

- Amended Complaint ¶ 35 ("Thus title to the ARS passed from DB to Xethanol.");

- Amended Complaint ¶ 56 ("Defendants offered and sold the ARS to Xethanol within the meaning of the Securities Act."); and

---

[2] *See* Defendant Deutsche Bank Securities, Inc. Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint, dated January 25, 2007 ("DB's Moving Memo") at 5.

[3] *See* DB's Moving Memo at 7.

[4] As explained in the Amended Complaint, "Auction rate securities are debt instruments with long term nominal maturity for which the interest rate is periodically reset via reverse, or 'dutch,' auctions." Amended Complaint ¶ 4. Auction Rate Securities have been much in the news lately as a large number of auctions have been failing because the number of investors wishing to sell the auction rate securities has, apparently, been far in excess of the number of investors wishing to buy. Copies of news articles concerning the auction rate securities market are attached to the Koh Dec. as Exhibit C.

- Amended Complaint ¶ 58 ("The ARS that Defendants offered and sold to Xethanol were not registered with the Securities and Exchange Commission and there was no effective registration statement as to the ARS when Defendants sold the ARS to Xethanol.").

Accordingly, the purported defect in the original complaint has been cured by the Amended Complaint and the Court should deny DB's motion to dismiss.

### Argument

**Xethanol's 12(a)(1) claim, as set forth in the Amended Complaint meets the plausibility standard that applies on motions to dismiss.**

As DB's Moving Memo notes, a court should deny a motion to dismiss where the claims set forth in the complaint – or in this case, the Amended Complaint[5] – are "plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2nd Cir. 2007). This plausibility standard is a low threshold.

After the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the law now provides that the factual allegations in the complaint must be enough only "to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965. In applying its holding in the *Bell Atlantic* case, the Supreme Court wrote, "Asking for plausible grounds to infer an agreement [in violation of the Sherman Antitrust Act] does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atlantic*, 127 S. Ct. at 1966. The *Bell Atlantic* Court continued "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very

---

[5] Xethanol filed its Amended Complaint pursuant to Fed R. Civ. P. 15(a)(1)(A) prior to DB serving its answer. DB does not dispute that Xethanol had the absolute right to file its Amended Complaint.

remote and unlikely.' *Bell Atlantic*, 127 S. Ct. at 1965, quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The United Stated Court of Appeals for the Second Circuit interpreted the *Bell Atlantic* decision in *Iqbal v. Hasty*, 490 F.3d 143 (2nd Cir. 2007). In *Iqbal* the Second Circuit wrote, "we believe the Court is not requiring a universal standard of heightened fact pleading, but instead is requiring a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations where such amplification is needed to render the claim *plausible*." *Ibqal*, 490 F.3d at 157-158 (emphasis in original).

Support for the Second Circuit's low threshold plausibility interpretation of *Bell Atlantic* is found in *Erickson v. Pardus*, 127 S. Ct. 2197, which was decided by the United States Supreme Court just two weeks after *Bell Atlantic*. In *Erickson*, the Supreme Court quoted *Bell Atlantic*, and wrote, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests'." *Erickson*, 127 S. Ct. at 2200, quoting *Bell Atlantic*, 127 S. Ct. at 1965 (*Bell Atlantic* was itself quoting *Conley v. Gibson*, 355 U.SA. 34, 47 (1957)).

Here, it is manifest that the Amended Complaint meets the low threshold plausibility standard. Indeed, Xethanol's 12(a)(1) claim is not only plausible; it is almost certain to succeed. The Amended Complaint states no less than six times that DB sold the ARS to Xethanol. This is not just a label or formulaic recitation of an element of a 12(a)(1) cause of action. It is supported by allegations of actual specific facts. Thus, the Amended Complaint alleges that Xethanol engaged Northeast Securities, Inc.

("Northeast") as its broker to assist Xethanol with its cash management program and that Northeast acted as a broker to place "buy" orders for the ARS on Xethanol's behalf. (Amended Complaint ¶ ¶28 and 34.) . The Amended Complaint further alleges that DB knew or reasonably should have known that Northeast was acting as a broker. (Amended Complaint ¶ 37.)

The Amended Complaint next alleges that when selling unregistered securities which may only be sold to so-called "qualified institutional buyers" (a "QIB") or "qualified purchasers" (a "QP") it is standard practice in the securities industry to obtain a written representation from the purchaser that it is a QIB or QP. Amended Complaint ¶ 38. With respect to auction rate securities it is the practice in the securities industry that where a security's sale is restricted to QIBs or QPs that underwriting investment house requires a written representation from the *end-user*. (*i.e.* the party that would own the security upon the completion of the transaction.) (Koh Dec. ¶ 9.)  Here, DB never obtained such a representation and Xethanol could not provide such a representation because it was not – and is not – a QIB or QP. (Amended Complaint ¶¶ 40-43; Koh Dec. ¶ 10.)

These facts demonstrate that Xethanol's allegation that it purchased the ARS from DB is plainly plausible. DB underwrote the ARS and, acting for its own account, sold them to the public.[6] Xethanol purchased the ARS from DB. Northeast acted as the broker and never took title to the securities. Allegations that the plaintiff purchased the securities from the defendant are sufficient to state a claim under section 12(a)(1) of the

---

[6] Because of the possibility, although unlikely, that DB did not take title to the ARS, the Amended Complaint names Pivot Master Trust and Camber Master Trust as defendants on the theory that these trusts are liable for Xethanol's losses on the 12(a)(1) claim if DB is not. Such alternative pleading is expressly permitted by Fed. R. Civ. P. 8(a)(3).

Securities Act. *See Pinter v. Dahl*, 486 U.S. 622, 642 (1988) ("At the very least, however, the language of [section 12(a)(1) of the Securities Act] contemplates a buyer-seller relationship not unlike traditional contractual privity. Thus, it is settled that [section 12 (a)(1) of the Securities Act] imposes liability on the owner who passed title, or other interest in the security, to the buyer for value."). Accordingly, Xethanol's Section 12(a)(1) claim meets the low plausibility standard that is necessary to defeat a motion to dismiss and the Court should deny DB's motion to dismiss the Original Complaint and its Section 12(a)(1) claim.[7]

### Conclusion

For all the reasons set forth above, the Court should deny DB's motion to dismiss the Original Complaint or the 12(a)(1) claim as set forth in the Amended Complaint and permit that claim to be litigated.

Dated: New York, New York
February 29, 2008

MEISTER SEELIG & FEIN LLP

_____
By: Howard S. Koh (HK 4730)
2 Grand Central Tower
140 East 45th Street – 19th Floor
New York, New York 10017
(212) 655-3500

---

[7] If this Court believes that additional facts must be included in the complaint to support the 12(a)(1) claim, Xethanol requests that it be granted leave to file a Second Amended Complaint. Pursuant to Fed. R. Civ. P. 15(a)(2) leave to file such an amended pleading should be liberally granted. *See Forman v. Davis*, 371 U.S. 178, 182 (If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, etc. – the leave sought [*i.e.* to amend the complaint] should, as the rules require, be 'freely given.'").