Duval & Stachenfeld LLP
Attorney for Defendant
Deutsche Bank Securities Inc.
By:  Allan N. Taffet, Esq. (AT-5181)
300 East 42nd Street
New York, New York 10017
Tel. No.: (212) 883-1700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

XETHANOL CORPORATION,                                      :

                                                          :    07 Civ. 11161 (AKH)

                                         Plaintiff,       :

                                                          :

            -against-                                      :

                                                          :

                                                          :

DEUTSCHE BANK SECURITIES INC.,                            :
PIVOT MASTER TRUST and CAMBER                             :
MASTER TRUST                                              :

                                                          :

                                         Defendants.      :

                                                          :

------------------------------------------------------------x

## MEMORANDUM OF LAW OF DEFENDANTS DEUTSCHE BANK SECURITIES INC., PIVOT MASTER TRUST AND CAMBER MASTER TRUST IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**Duval & Stachenfeld LLP**
300 East 42nd Street, Third Floor
New York, New York 10017
(212) 883-1700

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................iii-vii

PRELIMINARY STATEMENT............................................................................ 1

PROCEDURAL HISTORY ................................................................................. 3

FACTUAL ALLEGATIONS................................................................................ 4

ARGUMENT ....................................................................................................... 7

I.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR A
      VIOLATION OF SECTION 12(a)(1) OF THE SECURITIES ACT...................... 7

      A.  The Applicable Legal Standard For a
          Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) ..................................... 7

      B.  Defendants Are Not In Privity with
          and Did Not Sell A Security to Xethanol ..................................................... 8

      C.  Defendants Did Not Solicit Xethanol............................................................ 11

II.   XETHANOL'S SECTION 10(B) AND RULE 10B-5 CLAIM
      MUST BE DISMISSED BECAUSE IT FAILS TO COMPLY
      WITH THE HEIGHTENED PLEADING REQUIERMENTS
      OF FED. R. CIV. P. 9(b) AND THE PSLRA......................................................... 13

      A.  Both Fed. R. Civ. P. 9(b) And The PSLRA Impose
          Heightened Pleading Requirements For Securities Fraud Claims ............... 14

      B.  Xethanol Has Failed To Plead Its Section 10(b) Claim
          with Sufficient Particularity ........................................................................ 16

      C.  Xethanol Fails To Allege With Particularity Facts Supporting a
          "Strong Inference" Of Scienter .................................................................... 18

          1.  The Amended Complaint Fails to Allege Any Facts
              Showing Defendants Had "Motive And Opportunity"
              To Commit Fraud.............................................................................. 19

          2.  The Amended Complaint Fails to Allege Any Facts
              Demonstrating Strong Circumstantial Evidence Of
              Conscious Misbehavior or Recklessness ......................................... 20

i

III.   XETHANOL'S COMMON LAW FRAUD CLAIM MUST BE
        DISMISSED BECAUSE XETHANOL HAS NOT ALLEGED
        THE BASIC ELEMENTS OF FRAUD WITH PARTICULARITY ..................... ...22

CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

## CASES

Acito v. IMCERA Group, Inc.
       No. 92 CIV. 7156, 1993 WL 404144 (S.D.N.Y. Oct. 6, 1993) ............... 18

Acito v. IMCERA Group, Inc.
       47 F.3d 47 (2d Cir. 1995) ........................................................................ 15, 18

AIG Global Sec. Lending Corp. v. Banc. of Amer. Sec., LLC
       No. 01 Civ. 11448, 2005 WL 2385854 (S.D.N.Y Sept. 26, 2005) .......... 23

Allaire Corp. v. Okumus
       433 F.3d 248 (2d Cir. 2006) ....................................................................... 7

Bell Atlantic Corp. v. Twombly
       127 S. Ct. 1955 (2007) ............................................................................... 7

Capri v. Murphy
       856 F.2d 473 (2d Cir. 1988) ..................................................................... 12

Cortec Indus. v. Sum Holding, L.P.
       949 F.2d 42 (2d Cir. 1991) .................................................................... 9, 11

Decker v. Massey Ferguson, Ltd., 681 F.2d 111 (2d Cir. 1982) ................... 18

Demaria v. Anderson
       153 F. Supp. 2d 300 (S.D.N.Y. 2001) ....................................................... 9

DiVittorio v. Equidyne Extractive Indus.
       822 F.2d 1242 (2d Cir. 1987) .............................................................. 14, 17

Dresner v. utility.com, Inc.
       371 F. Supp. 2d 476 (S.D.N.Y. 2005) ...................................................... 14

Ellison v. American Image Motor Co., Inc.
       36 F. Supp. 2d 628 (S.D.N.Y. 1999) ............................................ 12, 17, n.5

Eternity Global Master Fund Ltd v. Morgan Guaranty Trust Co. of New York
       375 F.3d 168 (2d Cir. 2004) ..................................................................... 23

First Nationwide Bank v. Gelt Funding Corp.
       27 F.3d 763 (2d Cir. 1994) ............................................................... 11, n.3

Ganino v. Citizen Utils, Co.
       228 F.3d 154 (2d Cir. 2000) ..................................................................... 16

Glickman v. Alexander & Alexander Servs., Inc.
    No. 93 Civ. 7594, 1996 WL 88570 (S.D.N.Y. Feb. 29, 1996) ...............20, n.6

Goplem v. 51Jobs, Inc.
    453 F. Supp. 2d 759 (S.D.N.Y. 2006) .....................................................21

Grandon v. Merrill Lynch & Co.
    147 F.3d 184 (2d Cir. 1998).......................................................4, n.1

GSC Partners CDO Fund v. Washington
    368 F.3d 228 (3d Cir. 2004) ....................................................20, n.6

In re 1993 Corning Sec. Litig.,
    No. 93 Civ. 7015, 1996 WL 257603...........................................20

In re American Express,
    02 Civ. 5533, 2004 WL 632750 (S.D.N.Y Mar. 31, 2004)................19

In re Blech Secs. Litig.
    928 F. Supp. 1279 (S.D.N.Y. 1996) .......................................17, n.5

In re Boston Tech, Inc. Sec. Litig.
    8 F. Supp. 2d 43 (D. Mass 1998) ...................................................21

In re Carter Wallace, Inc. Sec. Litig.
    220 F.3d 36 (2d Cir. 2000) ........................................................21

In re Corning Sec. Litig.
    No. 93 Civ. 7015, 1996 WL 257603 (S.D.N.Y. May 15, 1996) ..............20

In re Cross Media Mktg. Corp. Sec. Litig.
    314 F. Supp. 2d 256 (S.D.N.Y. 2004) ....................................19-20

In re DRDGOLD Ltd. Sec. Litig.
    472 F. Supp. 2d 562 (S.D.N.Y. 2007) ....................................21

In re Health Mgmt. Sys., Inc. Sec. Litig.
    No. 97 Civ. 1865, 1998 WL 283286 (S.D.N.Y. June 1, 1998) ...............20, n.6

In re Glenayre Tech. Sec. Litig.
    No. 96 Civ. 8252, 1998 WL 915907 (S.D.N.Y. Dec. 30, 1998) ..............19

In re Laser Arms Corp. Sec. Litig.
    794 F. Supp. 475 (S.D.N.Y. 1989) ..........................................8, 11

In re Loral Space and Commc'n Ltd. Sec. Litig.
    No. 01 Civ. 4388, 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) ..............20

In re K-Tel Int'l Sec. Litig.
    300 F.3d 881 (8th Cir. 2002) ................................................... 15

Int'l Motor Sports Group, Inc. v. Gordon
    No. 98 Civ. 5611, 1999 WL 619633 (S.D.N.Y. Aug. 16, 2007) ............. 17

Iqbal v. Hasty
    490 F.3d 143 (2d Cir. 2007).......................................................... 8

Kadar Corp. v. Milbury
    549 F.2d 230 (1st Cir. 1977) ................................................... 11, n.3

Kalnit v. Eichler
    264 F.3d 131 (2d Cir. 2001)........................................... 13, 16, 19, 20

Lama Holding Co. v. Smith Barney Inc.
    88 N.Y.2d 413 (N.Y. 1996) ..................................................... 22

Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp.
    309 F.3d 71 (2d Cir. 2002)........................................................ 7

Leemon v. Burns
    175 F. Supp. 2d 551 (S.D.N.Y. 2001) ...................................... 14

Lentell v. Merrill Lynch & Co., Inc.
    396 F.3d 161 (2d Cir. 2005) ...................................................... 14

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young
    No. 91 Civ. 2923, 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ............. 17, n.5

Novak v. Kasaks
    216 F.3d 300 (2d Cir. 2000)................................... 15, n.4, 16, 19, 21

Pampano-Windy City Partners, Ltd. v. Bear Stearns & Co., Inc.
    794 F. Supp. 1265 (S.D.N.Y. 1992) ........................................ 8, 11, 13

Pinter v. Dahl
    486 U.S. 622, 108 S. Ct. 2063 (1988)....................................... 9, 11

Rombach v. Chang
    355 F.3d 164 (2d Cir. 2004) ................................................... 14, 19

Ross v. Bolton
    904 F.2d 819 (2d Cir. 1990) ................................................... 16-17

Salahuddin v. Jones
    992 F.2d 447 (2d Cir. 1993) ....................................................... 11, n.3

Shain v. Duff & Phelps Credit Rating Co.
    915 F. Supp. 575 (S.D.N.Y. 1996) ........................................ 12, 13

Shields v. Citytrust Bancorp, Inc.
    25 F.3d 1124 (2d Cir. 1994) .................................................... 14

Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.
    332 F.3d 116 (2d Cir. 2003) .................................................. 15, n.4

Spira v. Curtin
    No. 97 Civ. 2637, 2001 WL 611386 (S.D.N.Y. June 5, 2001) ................ 17

Tellabs, Inc. v. Makor Issues & Rights, Ltd.
    127 S.Ct. 2499 (2007) ............................................................ 15

The Pits Ltd. v. American Express Bank Int'l
    911 F. Supp. 710 (S.D.N.Y. 1996) ........................................... 23

U.S. ex rel. Woods v. Empire Blue Cross & Blue Shield
    No. 99 Civ. 4968, 2002 WL 1905899 (S.D.N.Y. Aug. 19, 2002) ............ 14

Wilson v. Saintine Exploration and Drilling Corp.
    872 F.2d 1124 (2d Cir. 1989)..................................................... 9

Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC
    474 F. Supp. 2d 505 (S. D.N.Y. 2007) ...................................... 21

Zucker v. Salaski
    963 F. Supp. 301 (S.D.N.Y. 1997) ......................................... 20-21

## STATUTES

15 U.S.C.A. § 77l(a)(1) ............................................................... Passim

15 U.S.C.A. §78j(b) ................................................................... Passim

15 U.S.C.A. § 78u-4(b)(1) ......................................................... 1, 15

## RULES & REGULATIONS

Fed. R. Civ. Pro. 12(b)(6) .......................................................... 1, 4, 7

Fed. R. Civ. Pro. 9(b) ................................................................ Passim

17 C.F.R. 240.10b-5 ................................................................................Passim

## REPORTS

H.R. Conf. Rep. No. 104-369 (1995) ....................................................15, n.4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

XETHANOL CORPORATION,                         :

                                  Plaintiff,  :

                                              :

          -against-                           :

                                              :   07 Civ. 11161 (AKH)

                                              :

DEUTSCHE BANK SECURITIES INC.,                :
PIVOT MASTER TRUST and CAMBER                 :
MASTER TRUST,                                 :

                                              :

                                  Defendants. :

                                              :

------------------------------------------------------------ x

## MEMORANDUM OF LAW OF DEFENDANTS DEUTSCHE BANK SECURITIES INC., PIVOT MASTER TRUST AND CAMBER MASTER TRUST IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Deutsche Bank Securities Inc. ("Deutsche Bank"), Pivot Master Trust ("Pivot"), and Camber Master Trust ("Camber" and collectively, the "defendants"), respectfully submit this memorandum of law in support of their motion to dismiss plaintiff Xethanol Corporation's ("plaintiff" or "Xethanol") amended complaint (the "Amended Complaint") for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for failure to plead fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) (the "PSLRA").

## PRELIMINARY STATEMENT

Although Xethanol had no direct interaction whatsoever with any of the defendants, its Amended Complaint seeks monetary damages arising from defendants' alleged sale of unregistered securities in violation of the federal securities laws.  Notably, Xethanol still fails

to allege in its Amended Complaint -- because it cannot -- that Xethanol purchased securities directly from Deutsche Bank or the two newly named defendants, Pivot and Camber, or that defendants solicited Xethanol to purchase securities. Thus, Xethanol's recycled Section 12(a)(1) claim fails for the same reason it failed the first time around.

Section 12(a)(1) of the Securities Act imposes liability upon a person that sells or offers to sell an unregistered security (without an applicable exception). A plaintiff may only recover damages, however, if it directly purchased the security from the defendant, or if the defendant directly or personally solicited the plaintiff.

In its initial complaint, Xethanol made clear that it had no contact whatsoever with defendants. There was neither a sale transaction nor any communication directly between defendants and Xethanol. Rather, according to Xethanol, a securities brokerage firm, Northeast Securities, Inc. ("Northeast") -- which is not named as a party to this action -- solely interacted with Deutsche Bank concerning the securities at issue, and it was Northeast that purchased those securities from Deutsche Bank. Apparently, Northeast then sold those securities to Xethanol.

In its Amended Complaint, Xethanol attempts to cure the incurable by simply deleting certain references to Northeast that were explicitly pled in the initial complaint, and instead inserts bald and conclusory allegations that "Defendants sold" to Xethanol the securities at issue. But even this strained attempt to rewrite the facts to manufacture a Section 12(a)(1) claim falls short, because elsewhere in the Amended Complaint Xethanol makes clear -- as it did in its original complaint -- that "Northeast purchased" the securities at issue and that all interactions regarding those securities were by and between Northeast and Deutsche Bank. Xethanol's Section 12(a)(1) claim, therefore, must be dismissed.

2

Xethanol also attempts to salvage its amended pleading by including two new fraud claims: one under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and the other under a common law fraud theory. Both of these fraud claims also must be dismissed, because they fail to meet the minimum pleading requirements under the Federal Rules of Civil Procedure and the PSLRA. As a threshold matter, the Amended Complaint fails to provide any detail about the "who, when, where and how" of the alleged misrepresentations and omissions, and therefore fails to comply with the heightened pleading requirements of both Fed. R. Civ. P. 9(b) and the PSLRA.

As a separate matter, the Amended Complaint is also deficient as it fails to plead particularized facts sufficient to establish the most critical element of a viable Section 10(b) claim -- scienter (fraudulent intent). Despite the PSLRA's express requirement that a plaintiff plead, with "particularity," facts giving rise to a "strong inference" of scienter as to each defendant, Xethanol relies solely on a conclusory allegation (that Deutsche Bank was motivated by its desire to "induc[e] buyers . . . to purchase the ARS"), which courts have rejected time and again. Nor does Xethanol allege any facts sufficient to create a "strong inference" that Deutsche Bank, Pivot or Camber were reckless with respect to their alleged misrepresentations and omissions.

Accordingly, Xethanol's amended pleading should be dismissed in all respects.

## PROCEDURAL HISTORY

The Amended Complaint represents Xethanol's second bite at the apple. Xethanol commenced this action upon filing its initial complaint on December 11, 2007. That pleading named a single defendant, Deutsche Bank, and asserted a single claim for relief pursuant to Section 12(a)(1) of the Securities Act.

Deutsche Bank filed a timely motion to dismiss the complaint for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). In its motion papers, Deutsche Bank demonstrated that the initial complaint failed to allege that Xethanol purchased securities from Deutsche Bank, or that Deutsche Bank solicited Xethanol to purchase securities -- essential elements of a Section 12(a)(1) claim.

In response to Deutsche Bank's motion to dismiss, Xethanol amended its complaint. Attempting to resuscitate its failed Section 12(a)(1) claim through re-wording certain factual allegations, Xethanol also adds to its new pleading two additional defendants, Pivot and Camber, and asserts two additional causes of action against each of the defendants: a claim pursuant to Section 10(b) of the Exchange Act and Rule 10b-5, and a claim for common law fraud.

As its initial motion to dismiss had been rendered moot by Xethanol's amendment as of right, Deutsche Bank withdrew its motion to dismiss the initial complaint on March 11, 2008, to conserve the resources of this Court and the parties. Because the Amended Complaint is still deficient as a matter of law, however, Deutsche Bank, Pivot and Camber respectfully request that this Court dismiss the Amended Complaint in its entirety.

## FACTUAL ALLEGATIONS[1]

According to the Amended Complaint, defendants sold in a private placement certain auction rate securities -- also known as "ARS" -- that were not registered with the Securities and Exchange Commission, and did so by means of false and misleading statements or omissions in violation of federal securities laws. See Amended Complaint at ¶¶ 2, 3.

---

[1] The allegations set forth in Xethanol's Amended Complaint are assumed to be true for the purposes of this motion only. Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).

4

Auction rate securities are debt instruments with long term maturities for which the interest rate is periodically reset, normally via a "Dutch" auction where bidders submit proposed rates at which they will purchase the securities. Id. at ¶ 4. Prior to investing, Xethanol recognized that with any auction rate security there is the possibility that there will not be a sufficient number of buyers to match the holders of the auction rate securities that want to sell in any given auction. Id. at ¶ 5. In such instances, the auction will "fail" and the holders of the auction rate securities will not be able to sell them via that particular auction. Id.

In connection with the sale of these securities, defendants prepared private placement memoranda. Id. at ¶¶ 7, 22-23. The private placement memoranda make clear that the auction rate securities were being offered and sold exclusively to "qualified institutional buyers" and to "qualified purchasers." Id. According to Xethanol, it was never provided a copy of either private placement memorandum prior to acquiring its positions in the auction rate securities. Id. at ¶ 39.

In June 2007, Xethanol acquired a $6,800,000 position in an auction rate security known as "PIVOT-1" (Id. at ¶ 32), and a $6,500,000 position in an auction rate security known as "CAMBER-8." Id. at ¶ 33. Although certain factual allegations in the initial complaint are omitted from the Amended Complaint, the allegations in the Amended Complaint still make clear that Xethanol never purchased these securities directly from Deutsche Bank, Pivot or Camber. The Amended Complaint also makes clear that Xethanol never had any communications or interactions with Deutsche Bank, Pivot or Camber regarding these securities. Rather, the securities at issue were sold to and purchased by a securities broker-dealer -- Northeast -- and, according to Xethanol, all communications and

transactions regarding these securities were by and between Deutsche Bank and Northeast. See, e.g., Id. at ¶ 34 ("Northeast acted as a broker placing the 'buy' orders on Xethanol's behalf"); Id. at ¶ 37 ("DB [Deutsche Bank] knew or should reasonably have known that when Northeast purchased the ARS DB [sic] was not acting for its own account and instead was acting as a broker purchasing the ARS for a client"); Id. at ¶ 46 ("[t]hereafter, Northeast, acting as broker, placed sell orders with respect to the ARS").

In or around August 2007, Deutsche Bank allegedly notified Northeast -- not Xethanol -- that an auction had failed. Id. at ¶ 47. Allegedly, there was "a follow-up telephone conversation with [Deutsche Bank]'s Auction Rate Securities Desk, on August 28, 2007" where representatives of Deutsche Bank "told Northeast that starting on August 13, 2007, [Deutsche Bank] had declared all of the Pivot-1 and Camber-8 auction rate securities 'failed auctions' and suggested that liquidity might only be available at discounted prices." Id. at ¶ 49. As a result of these failed auctions, Xethanol alleges that it was forced to liquidate the securities at a loss. Xethanol acknowledges, however, that "the disruptions in the credit markets coincided with the failure of the auctions for the ARS." Id. at ¶ 9.

The Amended Complaint does not allege that defendants ever communicated with Xethanol, ever provided Xethanol with any information or documents, or ever solicited Xethanol to purchase the auction rate securities. Although communications and transactions with respect to the auction rate securities allegedly occurred solely between the named defendants and Northeast, Xethanol has asserted a claim against defendants alleging a violation of Section 12(a)(1) of the Securities Act.

Xethanol also alleges in its Amended Complaint (but not in its initial complaint) that "defendants" made false and misleading statements or omissions in connection with the sale

of the auction rate securities -- specifically, that the auction rate securities were similar to money market fund investments and not subject to market risks, that Deutsche Bank would provide daily liquidity at par value for the auction rate security investments, and that the value of the auction rate securities was not associated with investments in "subprime" debt -- and has added fraud claims under Section 10(b) of the Exchange Act and common law theories. See Id. at ¶¶ 3, 29-31, 65, 75. The Amended Complaint does not allege who (and to whom) each alleged misrepresentation was made, nor when it was made, where it was made or how it was made.

**ARGUMENT**

**POINT I**

**THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
A VIOLATION OF SECTION 12(a)(1) OF THE SECURITIES ACT**

A.      **The Applicable Legal Standard For A Motion
To Dismiss Under Fed. R. Civ. P. 12(b)(6)**

Even though a plaintiff's allegations, on a motion to dismiss, are taken as true, the claim may still fail as a matter of law if the claim is not legally feasible. Allaire Corp. v. Okumus, 433 F.3d 248, 250 (2d Cir. 2006). "[B]ald assertions and conclusions of law will not suffice." Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp., 309 F.3d 71, 74 (2d Cir. 2002) (internal quotations omitted). Last term, the United States Supreme Court held that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-5 (2007) (internal quotations omitted). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in

7

the complaint are true." Id. at 1965 (internal citations omitted).  Accordingly, a complaint

only survives a motion to dismiss if it passes the "plausibility standard, which obliges a

pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 155 (2d

Cir. 2007) (internal quotations and emphasis omitted).  In this case, Xethanol has simply

failed to meet this pleading burden against defendants.

**B.    Defendants Are Not In Privity With And Did Not Sell A Security To Xethanol**

Xethanol does not explicitly allege that defendants directly sold a security to Xethanol

and therefore Xethanol's Section 12(a)(1) claim should be dismissed with prejudice.

Section 12(a)(1) of the Securities Act provides, in relevant part, that "[a]ny person

who offers or sells a security in violation of section 77e of this title [Section 5 of the

Securities Act] shall be liable . . . to the person purchasing such security from him."

15 U.S.C.A. § 77l(a)(1).  Section 12 is designed "to impose civil liability on those who sell

or offer securities by means of disclosure documents containing untrue statements or

misleading omissions, and on those who sell or offer securities without complying with

applicable statutory registration and prospectus requirements." Pampano-Windy City

Partners, Ltd. v. Bear Stearns & Co., Inc., 794 F. Supp. 1265, 1284 (S.D.N.Y. 1992).

To state a claim under Section 12(a)(1), a plaintiff must plead:  "(1) the sale or offer

to sell securities by the defendant; (2) the absence of a registration statement; and (3) the use

of the mails or the facilities of interstate commerce in connection with the sale or offer."

In re Laser Arms Corp. Securities Litig., 794 F. Supp. 475, 481 (S.D.N.Y. 1989).

The Amended Complaint must be dismissed because Xethanol has failed to satisfy

the "privity" of sale requirement of Section 12(a)(1).  Federal courts have recognized that

Section 12(a)(1) "contemplates a buyer-seller relationship not unlike traditional contractual privity." Wilson v. Saintine Exploration and Drilling Corp., 872 F.2d 1124, 1125 (2d Cir. 1989), quoting, Pinter v. Dahl, 486 U.S. 622, 642, 108 S. Ct. 2063, 2076 (1988); see Demaria v. Anderson, 153 F. Supp. 2d 300, 307 (S.D.N.Y. 2001) (holding that "[a]lthough the Securities Act does not define the term "seller," the Supreme Court in [Pinter] limited liability to those sales that take place within the context of buyer-seller relationships resembling traditional contractual privity"). Section 12(a)(1) "imposes liability on only the buyer's immediate seller; remote purchasers are precluded from bringing actions against remote sellers. Thus, a buyer cannot recover against his seller's seller." Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 49 (2d Cir. 1991) (emphasis in original) (quoting, Pinter, 486 U.S. at 643, 108 S. Ct. at 2077 n.21).

In its original complaint, Xethanol made clear that Deutsche Bank sold the auction rate securities at issue to Northeast and Northeast then sold them to Xethanol. In other words, the buyer-seller relationship was between Deutsche Bank and Northeast -- not between Deutsche Bank and Xethanol. In its Amended Complaint, however, Xethanol attempts to cure this fatal defect and do an end-run around the privity requirement by a conclusory allegation that "Defendants sold" the auction rate securities to plaintiff and by removing certain references to Northeast. See, e.g., Amended Complaint at ¶ 6 ("Defendants sold [instead of "offered"] the ARS at issue here, to investors including Xethanol"), Id. at ¶ 8 ("Defendants sold Xethanol [instead of "DB permitted Xethanol to purchase"] the ARS"), Id. at ¶ 32 ("Xethanol purchased [deleting "through its broker, Northeast"] a $6,800,000 position in the PIVOT-1 auction security"), and Id. at ¶ 33 ("Xethanol [deleting "acting through Northeast"] purchased a $6,500,000 position in the CAMBER-8 auction security").

Yet, despite Xethanol's strained effort at artful pleading through omission or vagueness, the only fair reading of the Amended Complaint makes clear -- as did the original complaint -- that defendants sold the auction rate securities at issue to Northeast, and that all communications concerning those securities were between defendants and Northeast:

- "Xethanol engaged Northeast [ ] as its broker to assist it with a cash management program . . ." (Amended Complaint at ¶ 28);

- "Northeast acted as a broker placing the 'buy' orders on Xethanol's behalf" (Id. at ¶ 34);

- "DB [Deutsche Bank] knew or should reasonably have known that when Northeast purchased the ARS DB [sic] was not acting for its own account and instead was acting as a broker purchasing the ARS for a client" (Id. at ¶ 37); and

- "Thereafter, Northeast, acting as broker, placed sell orders with respect to the ARS" (Id. at ¶ 46).[2]

Indeed, nowhere in the Amended Complaint is there a single allegation that Xethanol had any conversation or communication whatsoever with Deutsche Bank, Pivot or Camber. Nor does the Amended Complaint cite or otherwise refer to a single sales order, trade confirmation or trade ticket (or any other document for that matter) that lists or identifies Deutsche Bank, Pivot or Camber as the seller and Xethanol as the buyer of the auction rate securities at issue. That is because Xethanol cannot, consistent with Rule 11 of the Federal Rules of Civil Procedure, make such an allegation with respect to defendants.[3]

---

[2] Not only were all communications surrounding the initial purchase and sale of the auction rate securities strictly between defendants and Northeast, but all subsequent communications concerning Northeast's alleged attempt to sell the auction rate securities were likewise only between defendants and Northeast. See, e.g., Amended Complaint at ¶ 47 ("DB [Deutsche Bank] notified Northeast . . ."), Id. at ¶ 49 ("DB told Northeast . . ."); and Id. at ¶ 50 ("DB advised Northeast. . .").

[3] Indeed, the Amended Complaint contains not a single express allegation that Pivot or Camber ever sold the securities at issue directly to Xethanol, and the only conclusory allegation that Deutsche Bank "sold to" Xethanol is found in the introductory section of the Amended

As Xethanol clearly has not (and cannot) allege that it purchased the auction rate securities directly from defendants, Xethanol has, once again, failed to meet the privity requirement necessary to maintain a Section 12(a)(1) claim. As a matter of law, therefore, Xethanol lacks standing to assert a claim against defendants under Section 12(a)(1), and the Section 12(a)(1) claim should be dismissed with prejudice. See Laser Arms, 794 F. Supp. at 482 (holding that if a direct purchase from the defendant is not alleged, the claim must be dismissed with prejudice); see Pampano-Windy City Partners, 794 F. Supp. at 1285 (holding that because plaintiffs were not purchasers of securities, they do not have standing to bring suit under Section 12).

C.     **Defendants Did Not Solicit Xethanol**

Xethanol's Section 12(a)(1) claim is also fatally deficient because it fails -- as it did in the original complaint -- to allege any direct or personal solicitation by Deutsche Bank, Pivot or Camber.

Section 12 liability has been applied to brokers and others who solicit securities purchases on a regular basis. Cortec, 949 F.2d at 50. Such liability, however, "extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." Pinter, 486 U.S. at 647.

---

Complaint (see Id. at ¶2) -- the factual allegation section of the Amended Complaint is devoid of such allegations. But for the introductory reference, the remainder of the Amended Complaint makes clear that defendants sold the auction rate securities to Northeast -- not Xethanol. This single conclusory allegation, which at best contradicts the remainder of the amended pleading, is not sufficient to overcome dismissal of Xethanol's claim. See First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994) ("Courts do 'not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.'" (quoting Kadar Corp. v. Milbury, 549 F.2d 230, 233 (1st Cir. 1977)); Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993) (holding district court's dismissal of plaintiff's claims proper where plaintiff only made "wholly conclusory and inconsistent allegations").

11

Liability cannot be imposed upon "those who merely assist in another's solicitation efforts." Id. at 651 n.27. As a result, "persons are not liable under § 12 . . . unless they directly or personally solicit the buyer." Ellison v. American Image Motor Co., Inc., 36 F. Supp. 2d 628, 638 (S.D.N.Y. 1999) (internal citation omitted) (emphasis added); see Capri v. Murphy, 856 F.2d 473, 479 (2d Cir. 1988) (holding that plaintiff must show that defendants "actually solicited" plaintiffs).

The Amended Complaint contains no allegations that any of the defendants ever directly or personally solicited Xethanol. Indeed, as shown above, the Amended Complaint does not even allege that Deutsche Bank, Pivot or Camber ever communicated directly with Xethanol or provided to Xethanol any documents or information with respect to the auction rate securities. To the contrary, the only communications that are alleged in the Amended Complaint are between Deutsche Bank and Northeast. See, e.g., Amended Complaint at ¶ 47 ("DB notified Northeast"), Id. at ¶ 49 ("DB told Northeast"), and Id. at ¶ 50 ("DB advised Northeast"). Such third-party communications are insufficient to give rise to Section 12 liability. See Shain v. Duff & Phelps Credit Rating Co., 915 F. Supp. 575, 577 (S.D.N.Y. 1996) (holding that the fact that defendant provided information to two brokers who passed that information on to the plaintiff does not give rise to Section 12 liability). Accordingly, to the extent defendants may have communicated with Northeast, such communications (even if they did occur) are not direct solicitations to Xethanol and are simply not enough as a matter of law to state a Section 12(a)(1) claim against defendants. Id.

Moreover, the Amended Complaint acknowledges that "Xethanol was never provided a copy of either PPM [private placement memorandum] prior to acquiring its positions in the ARS" (Amended Complaint at ¶ 39), which only reinforces that defendants did not solicit

12

plaintiff. The allegation that defendants simply prepared private placement memoranda (Id. at ¶ 22) is not sufficient to give rise to an inference that Deutsche Bank, Pivot or Camber actively solicited plaintiff. See Pampano-Windy City Partners, 794 F. Supp. at 1284-5 (holding that defendant's participation in the preparation of an option disclosure statement was not a sufficient basis for an inference that defendants "actively solicited" plaintiffs' purported options purchase). As a result, the private placement memoranda alone cannot form the basis of a Section 12 claim.

Because Xethanol does not -- and cannot -- allege any direct or personal solicitation by Deutsche Bank, Pivot or Camber, Xethanol may not maintain a Section 12(a)(1) claim against any of them. See Shain, 915 F. Supp. at 582 (dismissing the Section 12 claim because plaintiff never alleged that defendant "directly solicited" him, nor alleged that defendant ever had any direct communication with the plaintiff).

## POINT II

### XETHANOL'S SECTION 10(B) AND RULE 10B-5 CLAIM MUST BE DISMISSED BECAUSE IT FAILS TO COMPLY WITH THE HEIGHTENED PLEADING REQUIREMENTS OF FED. R. CIV. P. 9(b) AND THE PSLRA

Section 10(b) of the Exchange Act, 15 U.S.C. 78j(b) (2007), and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5 (2007), provide that it is unlawful for any person to make a materially misleading statement or omission in connection with the purchase or sale of a security. To state a claim under Section 10(b), a plaintiff must allege, with particularity, specific facts demonstrating: (1) a misrepresentation or omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff justifiably relied, and (5) that proximately caused plaintiff's loss. See Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001).

13

"The failure to establish any element is fatal to a section 10(b)/Rule 10b-5 claim." Leemon

v. Burns, 175 F. Supp. 2d 551, 557 (S.D.N.Y. 2001) (dismissing securities fraud action).

As detailed below, Xethanol's Section 10(b) claim must be dismissed because:

(1) it fails to plead with particularity the "who, when, where and how" of the alleged

misrepresentations and omissions; and (2) it fails to allege particularized facts supporting a

"strong inference" that defendants acted with fraudulent intent.

## A.    Both Fed. R. Civ. P. 9(b) and the PSLRA Impose Heightened Pleading Requirements for Securities Fraud Claims

Rule 9(b) of the Federal Rules of Civil Procedure requires a party to plead the

elements of fraud with particularity. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127-

28 (2d Cir. 1994). The Second Circuit has made clear that Fed. R. Civ. P. 9(b) is applied

"assiduously to securities fraud" cases, such as Xethanol's Section 10(b) claim here. See

Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 168 (2d Cir. 2005).

To comply with Rule 9(b), a complaint's allegations of securities fraud must

"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the

speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004); Dresner

v. Utility.com, Inc., 371 F. Supp.2d 476, 493 (S.D.N.Y. 2005). A plaintiff must "set forth

the who, what, when, where and how of the alleged fraud." U.S. ex rel. Woods v. Empire

Blue Cross & Blue Shield, No. 99 Civ. 4968, 2002 WL 1905899, at *4 (S.D.N.Y. Aug. 19,

2002). Moreover, where multiple defendants are asked to respond to allegations of fraud, the

complaint should inform each defendant of the nature of his alleged participation in the

fraud. DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987). To

survive a motion to dismiss, a complaint must "specify each statement alleged to have been

14

misleading, the reason or reasons why the statement is misleading, and, if an allegation

regarding the statement or omission is made on information and belief, the complaint shall

state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B);

see also In re K-Tel Int'l, Inc. Sec. Litig, 300 F.3d 881, 890 (8th Cir. 2002) (Rule 9(b) and

the PSLRA require a plaintiff to plead particular facts demonstrating the "who, what, where,

when and how" of the alleged fraud).[4]

In addition, to satisfy the Rule 9(b) and PSLRA pleading requirements with respect to

the "scienter" element of a securities fraud claim, plaintiffs must allege facts giving rise to a

"strong inference" of fraudulent intent. Kalnit, 264 F.3d at 138. The Supreme Court has

held that for the inference of fraudulent intent to qualify as "strong," it must be more than

merely plausible or reasonable -- it "must be cogent and at least as compelling as any

opposing inference of nonfraudulent intent." Tellabs, Inc. v. Makor Issues & Rights, Ltd.,

127 S.Ct. 2499, 2502 (2007).

The requisite intent may be established either by alleging facts (1) showing that

defendants had both motive and opportunity to commit fraud or (2) constituting strong

circumstantial evidence of conscious misbehavior or recklessness. Acito v. IMCERA Group,

Inc., 47 F.3d 47, 52 (2d Cir. 1995). With respect to motive, "[g]eneral allegations that the

---

[4] In addition, a Section 10(b) claim must meet the heightened pleading requirements imposed by
the PSLRA. The PSLRA imposes "stringent procedural requirements on plaintiffs pursuing
private securities fraud actions" to curtail the routine filing of "meritless" lawsuits and "the abuse
of the discovery process." Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000). Indeed,
Congress enacted the PSLRA specifically to "filter out potential strike suits." Spielman v.
Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F.3d 116, 122 (2d Cir. 2003). The statute was
adopted by Congress in response to "significant evidence of abuse in private securities lawsuits"
under Section 10(b). H.R. Conf. Rep. No. 104-369, at 31 (1995), reprinted in 1995
U.S.C.C.A.N. 730, 730. Such abuses included "the routine filing of lawsuits against issuers of
securities and others whenever there is a significant change in an issuer's stock price, without
regard to any underlying culpability of the issuer, and with only faint hope that the discovery
process might lead eventually to some plausible cause of action[.]" Id.

defendants acted in their economic self-interest are not enough." <u>Ganino v. Citizens Utils.</u>
<u>Co.</u>, 228 F.3d 154, 170 (2d Cir. 2000). And "[m]otives that are generally possessed by most
corporate directors and officers do not suffice." <u>Kalnit</u>, 264 F.3d at 139. As to circumstantial
evidence of conscious misbehavior or recklessness, these have been defined respectively by
the Second Circuit as "deliberate illegal behavior," and "conduct which is highly
unreasonable and which represents an extreme departure from the standards of ordinary
care." <u>Novak</u>, 216 F.3d at 308, 312.

**B.    <u>Xethanol Has Failed to Plead Its Section 10(b) Claim with Sufficient Particularity</u>**

Xethanol's failure to plead with particularity the "who, when, where and how" of the
alleged misrepresentations and omissions here proves fatal to its Rule 10b-5 cause of action.
Indeed, the Amended Complaint contains only general allegations of allegedly misleading or
omitted statements of material facts concerning the auction rate securities at issue. <u>See</u>, e.g.,
Amended Complaint at ¶ 65 ("that the ARS were similar to money market fund investments
in that they were not subject to market risk, that DB would provide daily liquidity at par for
investments in ARS, and that the value of the ARS was not in any [ ] associated with
investments in 'subprime' debt."), and at ¶ 67 ("Defendants also omitted to state material
facts concerning the ARS, namely that they could only be purchased by an investor that was
both and QIB and QP and the ARS had not been registered with the SEC and had no valid
exemption from registration with the SEC.").

These allegations are plainly deficient in failing to state -- let alone with any
particularity -- <u>who</u> made them and <u>to whom</u>, <u>when</u> they were made, <u>where</u> they were made
and <u>how</u> they were made. Without these specifics, Deutsche Bank, Pivot and Camber lack
notice sufficient to prepare their defense. <u>Ross v. Bolton</u>, 904 F.2d 819, 823 (2d Cir. 1990)

("[t]he primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based.").

First, Xethanol fails to identify clearly which of the defendants made the alleged misrepresentations and omissions set forth in the Amended Complaint. Indeed, the Amended Complaint is confusing in this regard. <u>Compare</u> Amended Complaint ¶¶ 29-31 ("DB represented . . .") <u>with</u> <u>Id.</u> at ¶¶ 65-69 ("Defendants made false and misleading statements of material fact"). And there is no way to divine from the pleading who said what to whom and when. Where, in cases like this one, multiple defendants are involved, the complaint is "required to describe specifically each defendant's alleged participation in the fraud." <u>Spira v. Curtin</u>, No. 97 Civ. 2637, 2001 WL 611386, at *3 (S.D.N.Y. June 5, 2001); <u>see</u> <u>DiVittorio</u>, 822 F.2d at 1247 ("where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").[5] Xethanol's Amended Complaint simply fails to do so.

Second, the Amended Complaint fails to provide the dates or times of the alleged misrepresentations and omissions. Although Xethanol "need not plead dates, times and places with absolute precision," <u>International Motor Sports Group, Inc. v. Gordon</u>, No. 98 Civ. 5611, 1999 WL 619633, at *3 (S.D.N.Y. Aug. 16, 1999), Xethanol fails to provide any sort of reasonably specific timeframe for when these alleged misrepresentations and omissions occurred.

---

[5] <u>See also</u> <u>Ellison</u>, 36 F. Supp. 2d at 640-41 (S.D.N.Y. 1999) (where a case involves multiple defendants, F.R.C.P. 9(b) requires that the complaint allege facts specifying each defendant's contribution to the fraud, identifying which defendant is responsible for which act); <u>In re Blech Secs. Litig.</u>, 928 F. Supp. 1279, 1294 (S.D.N.Y. 1996) ("Rule 9(b) is not satisfied by a complaint in which '"defendants are clumped together in vague allegations'"); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young</u>, 91 Civ. 2923, 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994) ("Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b).").

Finally, Xethanol entirely fails to plead where these alleged misrepresentations and omissions occurred as required under the PSLRA and Rule 9(b). There is likewise no mention of to whom at Xethanol any of the alleged misrepresentations or omissions were made or by what method they were made (i.e., by e-mail, telephone, written correspondence, etc.). The Amended Complaint's pleading deficiencies in this regard are obvious; it is elsewhere clear from the Amended Complaint that Xethanol had no communications or interactions with and received no documentation from Deutsche Bank, Pivot or Camber whatsoever.

Accordingly, Xethanol's Rule 10b-5 cause of action must be dismissed because it fails to provide the detailed factual predicates of securities fraud, as specifically required by Fed. R. Civ. P. 9(b) and the PSLRA.

**C.    Xethanol Fails to Allege With Particularity Facts Supporting a "Strong Inference" of Scienter**

Even if Xethanol had pleaded adequately the circumstances constituting fraud (which it has not), its 10b-5 claim would be insufficient nonetheless because it fails adequately to plead scienter -- a mental state embracing "intent to deceive, manipulate, or defraud." Novak, 216 F.3d at 306. As this Court explained, "[i]t is well established by now that section 10(b) was not designed to regulate corporate mismanagement nor prohibit conduct which does not involve manipulation or deception . . . . To state a claim under section 10(b), plaintiff must allege actions indicat[ing] an intent to deceive, manipulate, or defraud." Acito v. IMCERA Group, Inc., 1993 WL 404144, at *3 (S.D.N.Y. Oct. 6, 1993) (quoting Decker v. Massey Ferguson, Ltd., 681 F.2d 111, 115 (2d Cir. 1982), aff'd, Acito, 47 F.3d 47.

As set forth above, in the Second Circuit the requisite "strong inference" of fraud must be established either "(a) by alleging facts to show that defendants had both motive and

opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." <u>Novak</u>, 216 F.3d at 307. Whether analyzed under the rubric of "motive and opportunity" or "conscious misbehavior or recklessness," the Amended Complaint is devoid of sufficient particularized facts giving rise to a "strong inference" that Deutsche Bank, Pivot or Camber acted with scienter.

### 1. The Amended Complaint Fails to Allege Any Facts Showing That Defendants Had "Motive and Opportunity" to Commit Fraud

To establish "motive" to commit securities fraud, Xethanol must allege particularized facts demonstrating that each defendant realized a specific "concrete benefit" from each of their alleged misrepresentations. <u>In re American Express</u>, 02 Civ. 5533, 2004 WL 632750, at *13 (S.D.N.Y. Mar. 31, 2004). Motive allegations are not satisfied by allegations shared by "virtually every company in the United States" or virtually all corporate executives. <u>Rombach</u>, 355 F.3d at 177; <u>Kalnit</u>, 264 F.3d at 139-140. In this regard, plaintiff cannot premise motive allegations on an executives desire to maintain a high stock price to maximize his or her compensation. <u>Rombach</u>, 355 F.3d at 177; <u>see also</u> <u>In re Glenayre Tech. Inc. Sec. Litig.</u>, 1998 WL 915907, at *2 (S.D.N.Y. Dec. 30, 1998) (plaintiff may not establish motive by simply alleging a desire to maintain a high stock price, absent allegations that a defendant made sales of stock that were suspiciously timed and in unusual amounts).

Xethanol's conclusory assertion that defendants "made their false statements of material fact and omitted to state material facts with scienter and for the purpose and intent of inducing buyers such as Xethanol to purchase the ARS" (Amended Complaint at ¶ 69) does not satisfy the PSLRA's "strong inference" requirement. Indeed, courts have uniformly rejected such a motive as inadequate to support an inference of scienter because it can be imputed to all corporate entities. <u>See</u>, <u>e.g.</u>, <u>In re Cross Media Mktg. Corp. Sec. Litig.</u>, 314 F.

Supp. 2d 256, 265 (S.D.N.Y. 2004) ("the alleged desires to raise additional capital in a private placement or to maintain compliance with the financial covenants of a company loan agreement are similarly inadequate to support an allegation of an intent to commit fraud"); In re Loral Space & Commc'n Ltd. Sec. Litig., No. 01 Civ. 4388, 2004 WL 376442, at *6 (S.D.N.Y. Feb. 27, 2004) (desire to "secure additional financing on the most favorable terms possible" too generalized a motive); In re 1993 Corning Sec. Litig., No. 93 Civ. 7015, 1996 WL 257603, at *6 (S.D.N.Y. May 15, 1996) (recognizing "Second Circuit's unequivocal rejection of the concept of motive predicated upon the desire to maximize the marketability of debt securities").[6]

Accordingly, Xethanol has failed to plead facts sufficient to show that Deutsche Bank, Pivot or Camber had a "motive and opportunity" to commit fraud.

### 2. The Amended Complaint Fails to Allege Any Facts Demonstrating Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness

Having failed to allege scienter through "motive and opportunity," a plaintiff claiming a violation of Section 10(b) and Rule 10b-5 bears the heavier burden of "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Kalnit, 264 F.3d at 142 (emphasis added); Zucker v. Salaski, 963 F. Supp. 301, 309 (S.D.N.Y. 1997) ("Where a plaintiff relies exclusively on knowing or reckless conduct, as opposed to motive

---

[6] See also In re Health Mgmt. Sys., Inc. Sec. Litig., No. 97 Civ. 1865, 1998 WL 283286, at *6 n.4 (S.D.N.Y. June 1, 1998) (mere "[d]esire to consummate [a] corporate transaction does not constitute a motive for securities fraud"); Glickman v. Alexander & Alexander Servs., Inc., No. 93 Civ. 7594, 1996 WL 88570, at *6 (S.D.N.Y. Feb. 29, 1996) ("I cannot think of two broader, or in this case less substantiated, motives than a 'desire to raise much needed capital' for the benefit of the institutional defendant" and find that motive allegations based on a desire to raise capital "are of the generalized, commonplace nature that the courts within this circuit have found to provide an insufficient basis for an inference of scienter"); GSC Partners CDO Fund v. Washington, 368 F.3d 228, 237 (3d Cir. 2004) ("In every corporate transaction, the corporation and its officers have a desire to complete the transaction . . . [s]uch allegations alone cannot give rise to a 'strong inference' of fraudulent intent").

and opportunity, the factual allegations must be "proportionally greater."). Under this "conscious misbehavior" standard, a plaintiff must, at a minimum, allege facts showing that the defendant engaged in reckless conduct "which is <u>highly</u> unreasonable <u>and</u> which represents an <u>extreme</u> <u>departure</u> from the standards of ordinary care." <u>In re DRDGOLD Ltd. Sec. Litig.</u>, 472 F. Supp. 2d 562, 571 (S.D.N.Y. 2007) (emphasis added) (citing <u>In re Carter-Wallace, Inc. Sec. Litig.</u>, 220 F.3d 36, 39 (2d Cir. 2000)).

The conscious misbehavior standard requires plaintiffs to allege that a defendant possessed "knowledge of facts or access to information contradicting their public statements." <u>Goplem v. 51Jobs, Inc.</u>, 453 F. Supp. 2d 759, 773 (S.D.N.Y. 2006) (quoting <u>Novak</u>, 216 F.3d at 308). This can be done only by "identify[ing] internal reports, memoranda or the like and alleg[ing] both the contents of those documents and defendants' possession of them at the relevant time." <u>In re Boston Tech, Inc. Sec. Litig.</u>, 8 F. Supp. 2d 43, 57 (D. Mass. 1998); <u>Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC</u>, 474 F. Supp. 2d 505, 516-18 (S.D.N.Y. 2007) (granting a motion to dismiss where plaintiffs "fail to identify a single specific report" indicating that public statements were "contemporaneously false"). Xethanol in this case does not come close to meeting that high threshold.

Here, Xethanol fails to plead <u>any</u> particularized facts demonstrating that defendants knew any of their alleged statements were misleading. Not a single report, memorandum or the like is identified in the Amended Complaint to show that Deutsche Bank, Pivot or Camber allegedly knew that these alleged misrepresentations were false when made. To the contrary, the only document cited by Xethanol in the Amended Complaint is the private placement memoranda issued in connection with the securities at issue. According to Xethanol, however, the private placement memoranda clearly state that the auction rate

21

.

securities at issue "were being sold exclusively to 'qualified institutional buyers'" (Amended Complaint at ¶ 23) and to "qualified purchasers." Id. at ¶ 7. These allegations directly conflict with Xethanol's claim that defendants omitted to state that the auction rate securities could only be purchased by qualified institutional buyers and qualified purchasers. Id. ¶ 67.

The facts alleged simply do not demonstrate conscious misbehavior or recklessness. There is absolutely no mention of "deliberate illegal behavior," or "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." Novak, 216 F.3d at 308 (internal quotations omitted).

Accordingly, Xethanol's generic, conclusory allegation that fraudulent intent existed is simply not enough to meet the heightened pleading standards for securities fraud cases and provides an independent basis for dismissing Xethanol's securities fraud claim.

### POINT III

### XETHANOL'S COMMON LAW FRAUD CLAIM MUST BE DISMISSED BECAUSE XETHANOL HAS NOT ALLEGED THE BASIC ELEMENTS OF FRAUD WITH PARTICULARITY

Xethanol's common law fraud claim must be dismissed for the same reasons that its federal securities fraud claim fails.

To plead a common law fraud claim under New York law, a plaintiff must allege: (1) the defendant's misrepresentation or omission of material fact; (2) the defendant's intent to deceive plaintiff; (3) justifiable reliance upon the misrepresentation by the defrauded party; and (4) that the plaintiff's injury was caused by the defendant's misrepresentation or omission. Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996). Moreover, common law fraud actions are subject to the heightened pleading requirements of Fed. R.

22

Civ. P. 9(b).  <u>Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Company of New York</u>, 375 F.3d 168, 187 (2d Cir. 2004).

Because the elements of common law fraud in New York are "substantially identical to those governing §10(b), the identical analysis applies."  <u>AIG Global Sec. Lending Corp. v. Banc. of Amer. Sec., LLC</u>, No. 01 Civ. 11448 2005 WL 2385854, at *16 (S.D.N.Y. Sept. 26, 2005); <u>see</u> <u>also</u>  <u>The Pits Ltd. v. American Express Bank Int'l</u>, 911 F. Supp. 710, 719 (S.D.N.Y. 1996) ("The elements of common law fraud are [ ] essentially the same as those which must be alleged in order to establish a claim under Section 10(b) and Rule 10b-5 . . . . Therefore, the common law fraud claim suffers from the same deficiencies.").  Similarly, the operative facts forming the basis of Xethanol's common law fraud claim are the same as those underlying its federal securities fraud claim.

Accordingly, Xethanol's common law fraud claim must be dismissed as a matter of law because it suffers from the same deficiencies as Xethanol's securities fraud claim.

## CONCLUSION

For the reasons set forth above, Deutsche Bank, Pivot and Camber respectfully request that all of the claims in the Amended Complaint be dismissed with prejudice.

Dated:  New York, New York
        April _19_, 2008

                                    Respectfully submitted,

                                    DUVAL & STACHENFELD LLP

                        By:         _____
                                    Allan N. Taffet, Esq. (AT-5181)
                                    300 East 42nd Street
                                    New York, NY 10017
                                    Tel. No.:  (212) 883-1700

                                    Attorneys for Defendants
                                    Deutsche Bank Securities Inc.,
                                    Pivot Master Trust, and
                                    Camber Master Trust

J. Andrew Stephenson, Esq.
Joshua C. Klein, Esq.
    - Of Counsel -