UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
XETHANOL CORPORATION,

                Plaintiff,                      **Case No. 07 CV 11161 (AKH)**

     -against-

DEUTSCHE BANK SECURITIES, INC.,
PIVOT MASTER TRUST, and
CAMBER MASTER TRUST,

                Defendants.
-----------------------------------------------------------------X

## SERVICE LIST

Deutsche Bank Securities, Inc.
60 Wall Street
New York, New York 10005

Pivot Master Trust
c/o BNYM
White Clay Center
Route 273
Newark, Delaware 19711

Camber Master Trust
c/o BNYM
White Clay Center
Route 273
Newark, Delaware 19711

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
XETHANOL CORPORATION,

             Plaintiff,

    -against-

DEUTSCHE BANK SECURITIES, INC.,
PIVOT MASTER TRUST, and
CAMBER MASTER TRUST,

             Defendants.
------------------------------------------------------------X

**AMENDED COMPLAINT**

Case No. 07 CV 11161 (AKH)

**JURY TRIAL DEMANDED**

RECEIVED
FEB 19 2008
U.S.D.C. S.D.N.Y.
CASHIERS

      Plaintiff Xethanol Corporation by its attorneys, Meister Seelig & Fein LLP, as and for its Complaint against Deutsche Bank Securities, Inc. ("DB"), Pivot Master Trust ("Pivot") and Camber Master Trust ("Camber") alleges as follows:

### NATURE OF THE ACTION

      1.    This action arises from Defendants' violations of Sections 12(a)(1) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77l and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and United States Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder. Defendants are also guilty of common law fraud.

      2.    DB was the underwriter of, and sold to Plaintiff Xethanol Corporation ("Xethanol"), an alternative energy company, certain auction rate securities known as "Pivot-1" and "Camber-8" (collectively Pivot-1 and Camber-8 are referred to herein as the "ARS"). Pivot and Camber issued the Pivot 1 and Camber 8 ARS respectively. Neither the Pivot-1 nor the Camber-8 securities were registered pursuant to Section 5 of the Securities Act, and neither had a valid exemption from registration. As a result,

Defendants are strictly liable for Xethanol's losses in connection with its purchases of the ARS, which totaled $1,588,500.

3. Additionally, Defendants sold the ARS by means of false and misleading statements in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder. These false and misleading statements, which also provide the basis for Xethanol's common law fraud claim, included statements that DB would provide daily liquidity, at par value, in the event the purchasers of the ARS wished to liquidate their investment.

4. Auction rate securities are debt instruments with long term nominal maturity for which the interest rate is periodically reset via reverse, or "dutch," auctions. Auction rate securities are issued at par value. The interest rate is usually reset every seven, twenty-eight, or thirty-five days by means of a dutch auction where bidders submit proposed rates at which they will purchase the auction rate securities. The lowest interest rate at which all sellers of the auction rate securities can be matched to willing buyers for their auction rate securities becomes the interest rate on the auction rate securities until the next auction is held.

5. With any auction rate security there is the possibility that there will not be a sufficient number of buyers to match the holders of the auction rate securities that want to sell in any given auction. If this happens then the auction "fails," in the parlance of the industry. A failed auction means that holders of auction rate securities will not be able to sell their auction rate securities at par value. In short, a failed auction means the auction rate security becomes illiquid.

6.  Defendants sold the ARS at issue here, to investors including Xethanol. The ARS were never registered with the Securities and Exchange Commission as required by Section 5 of the Securities Act. Rather than register the ARS, DB attempted to sell the ARS in a private placement, which was to be exempt from registration.

7.  In order to ensure that the ARS could be sold in a private placement, the ARS were to be offered for sale only to certain buyers that presumably were capable of evaluating the risks of the purchase of the ARS and had the financial resources to shoulder such risks. To that end, the private placement memoranda ("PPMs") prepared for the ARS specifically limited their sale to certain qualified institutional buyers ("QIBs") and qualified purchasers ("QPs").

8.  Despite the restrictions on who could purchase the ARS set forth in the PPMs, Defendants sold Xethanol the ARS even though Xethanol was neither a QIB nor a QP. Indeed, Defendants did not even follow standard industry practice and obtain a written representation from Xethanol that it was a QIB or a QP.

9.  In August 2007, Xethanol sought to liquidate its ARS position to provide it with cash for its business operations. At approximately the same time, however, the disruptions in the credit markets coincided with the failure of the auctions for the ARS.

10. In September 2007, faced with the fact that the ARS had become illiquid and its continued need for cash, Xethanol sold its ARS at a discount from par value of $1,588,500.

## PARTIES, JURISDICTION AND VENUE

11. Plaintiff Xethanol is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business at 1185 Avenue of the Americas, 20th Floor, New York, New York 10036.

12. Defendant DB is a corporation organized and existing under the laws of the state of Delaware, with offices at 60 Wall Street, New York, New York 10005.

13. Pivot is a statutory trust organized and existing under the laws of the state of Delaware, with a registered agent for service of process at BNYM, White Clay Center, Route 273, Newark Delaware 19711.

14. Camber is a statutory trust organized and existing under the laws of the state of Delaware, with a registered agent for service of process at BNYM, White Clay Center, Route 273, Newark Delaware 19711.

15. Jurisdiction of this Court is based upon Section 22 of the Securities Act, (15 U.S.C. §77v), section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. §§1331, 1337 and 1367.

16. Venue is proper in this District under Section 22 of the Securities Act, and 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

17. Camber was created in 2007 by DB or one of its affiliates for the purpose of issuing series of auction rate securities.

18. Pivot was created in 2007 by DB or one of its affiliates for the purpose of issuing series of auction rate securities.

19. After DB or its affiliates created Pivot and Camber the Pivot and Camber Trusts issued series of auction rate securities, including the ARS at issue in this action.

20. DB acquired the ARS and offered the ARS for sale to the public as the sole underwriter.

21. Defendants did not register the ARS with the Securities and Exchange Commission.

22. Defendants prepared separate PPMs in connection with the offerings of the ARS.

23. In the case of both Pivot and Camber, the PPMs provided that the ARS were being sold exclusively to 'qualified institutional buyers' *i.e.* QIBs as defined in SEC Rule 144A.

24. Pivot's PPM also provided that purchasers of Pivot must be "qualified purchasers" as defined by section 2(a)(51)(A) of the Investment Company Act of 1940, *i.e.* QPs.

25. With respect to Camber, the requirement that purchasers of Camber must be "qualified purchasers" as defined by section 2(a)(51)(A) of the Investment Company Act of 1940, *i.e.* QPs was added by means of a "Series Pricing Supplement."

26. Xethanol is not a QIB, as defined by Rule 144A of the Securities Act. Rule 144A of the Securities Act defines a QIB as an entity such as an insurance company, investment company, employee benefit plan, 501(c)(3) organization, or investment advisor, acting for its own account or the accounts of other QIBs that in the aggregate owns and invests on a discretionary basis at least $100 million of securities of issuers that are not affiliated with the entity.

27. Xethanol is also not a QP pursuant to section 2(a)(51)(A) of the Investment Company Act of 1940 which defines a QP as any person, including a company, acting for its own account or the accounts of other qualified purchasers, who in the aggregate owns and invests on a discretionary basis, not less than $ 25,000,000 in investments.

28. Xethanol engaged Northeast Securities, Inc. ("Northeast") as its broker to assist it with a cash management program, the objective of which to invest cash that Xethanol did not immediately need for its operations in short term, liquid securities that would not be subject to market risk.

29. DB represented that the ARS were similar to money market fund investments and that they were not subject to market risk.

30. DB also represented that it would provide daily liquidity at par for investments in ARS.

31. DB also represented that the value of the ARS was not in any way associated with investments in "subprime" debt.

32. On June 4, 2007, Xethanol purchased a $6,800,000 position in the PIVOT-1 auction security (CUSIP: 725809AA5) (specifically, this security is described as Pivot Master Trust AR CLNS Certificates Series FLTG 144A dated 5/8/07 with a maturity date of 9/20/17).

33. On June 13, 2007, Xethanol purchased a $6,500,000 position in the CAMBER-8 auction security (CUSIP: 13200DAA0) (specifically, this security is described as Camber Master Trust dated 1/19/07 with a maturity date of 12/20/16).

34. With respect to Xethanol's purchases of the Pivot and Camber ARS, Northeast acted as a broker placing the "buy" orders on Xethanol's behalf.

35. Thus, title to the ARS passed from DB to Xethanol.

36. Alternatively, title to the ARS passed from Pivot and Camber to Xethanol.

37. DB knew or should reasonably have known that when Northeast purchased the ARS DB was not acting for its own account and instead was acting as a broker purchasing the ARS for a client.

38. When selling unregistered securities which, may only be sold to QIBs or QPs, it is the standard practice in the Securities Industry to obtain a written representation, signed by the purchaser of the securities that the purchaser is a QIB or QP.

39. Xethanol was never provided a copy of either PPM prior to acquiring its positions in the ARS.

40. Defendants never sought or obtained a written representation from Xethanol that it was a QIB or a QP.

41. At no time did Xethanol represent that it was a QIB or a QP.

42. Xethanol is not a QIB or a QP.

43. Xethanol's Quarterly Report filed on May 15, 2007 with the United States Securities and Exchange Commission on Form 10-Q for the quarter ended March 31, 2007 reported that Xethanol's net worth was approximately $48 million and that the total value of its cash was approximately $21 million.

44. Xethanol relies on a certain level of liquidity in order to sustain its business, pay salaries, debts and other customary business expenses.

45. In August 2007, Xethanol ordered a partial sale of the Pivot position.

46. Thereafter Northeast, acting as broker, placed sell orders with respect to the ARS.

47. On or about August 27, 2007, DB notified Northeast that an auction had failed and the partial sale of the Pivot position Xethanol had ordered could not be completed.

48. DB also refused to purchase the ARS at par thereby breaching its representation that it would provide daily liquidity with respect to the ARS.

49. In a follow-up telephone conversation with DB's Auction Rate Securities Desk, on August 28, 2007, representatives of DB told Northeast that starting on August 13, 2007, DB had declared all of the Pivot-1 and Camber-8 auction rate securities "failed auctions" and suggested that liquidity might only be available at discounted prices.

50. On the same phone call, DB advised Northeast that the upcoming September 5, 2007 auction in Xethanol's second holding, Camber-8, was expected to fail, as DB was unwilling to change its approach regarding liquidity for these securities.

51. Ultimately, the September 5, 2007 auction of the Camber-8 ARS failed.

52. Unlike a QIB or QP investor that has significant resources to deal with circumstances of illiquidity, Xethanol does not have the liquidity to meet its day-to-day cash requirements without the proceeds from the ARS. Accordingly, when the auctions failed, Xethanol's only option to obtain the cash needed to sustain its operations was to liquidate its investment at an amount below par.

53. Thus, on September 20, 2007, Xethanol sold its position in Pivot-1 at 90.5% of par value and its position in Camber-8 at 85.5% of par value, for a total loss of $1,588,500.

### First Claim for Relief
### Violation of Section 12(a)(1) of the Securities Act

54. Xethanol repeats and realleges paragraphs 1 – 53 above as if fully set forth herein.

55. The ARS are securities within the meaning of the Securities Act.

56. Defendants has offered to sell and sold the ARS to Xethanol within the meaning of the Securities Act.

57. Defendants offered and sold the ARS by the use of the instrumentalities of interstate commerce.

58. The ARS that Defendants offered and sold to Xethanol were not registered with the Securities and Exchange Commission and there was no effective registration statement as to the ARS when Defendants sold the ARS to Xethanol.

59. There was no valid exemption in effect that permitted the ARS's offer and sale without registration under the Securities Act.

60. The offer and sale of the ARS violated §5 of the Securities Act.

61. Pursuant to Section 12 of the Securities Act, any person who offers or sells a security in violation of §5 is liable to a purchaser for the amount paid for such security with interest thereon, less any income received thereon, upon the tender of such security, or for damages if the security is no longer owned.

62. Xethanol sold its position in Pivot at 90.5% of par value and its position in Camber at 85.5% of par value, for a total loss of $1,588,500.

63. For the foregoing reasons, Defendants are liable to Xethanol for damages in an amount of at least $1,588,500 plus interest, or such greater amount as may be determined at trial.

## Second Claim for Relief
### Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5

64. Xethanol repeats and realleges the allegations of paragraphs 1 through 63 of the Complaint as if fully set forth herein.

65. Defendants made false and misleading statements of material fact in connection with the sale of the ARS, including: that the ARS were similar to money market fund investments in that they were not subject to market risk, that DB would provide daily liquidity at par for investments in ARS, and that the value of the ARS was not in any associated with investments in "subprime" debt.

66. At the time Defendants made these false and misleading statements, Xethanol did not know and could not have known through the exercise of due care that the statements were false and misleading.

67. Defendants also omitted to state material facts concerning the ARS, namely that they could only be purchased by an investor that was both and QIB and QP and the ARS had not been registered with the SEC and had no valid exemption from registration with the SEC.

68. At the time Defendants failed to state these material facts, Xethanol did not know and could not have known through the exercise of due care of the existence of these material facts.

69. Defendants made their false statements of material fact and omitted to state material facts with scienter and for the purpose and intent of inducing buyers such as Xethanol to purchase the ARS.

70. Had Xethanol known that the that the ARS were subject to market risk, that DB would not provide daily liquidity at par for investments in ARS, and that the ARS could only be purchased by entities that were both a QIB and QP, Xethanol would not have purchased the ARS and thus Xethanol justifiably relied on Defendants' material false statements of fact and omissions.

71. By reason of the foregoing conduct, Defendants knowingly, or recklessly through the use of the instrumentalities of interstate commerce, and in connection with the purchase and sale of the ARS violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder in that Defendants (i) employed devices, schemes and artifices to defraud; (ii) made false statements of material fact or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, transactions, practices and a course of business that operated as a fraud and deceit upon Xethanol.

72. Because of the foregoing conduct, Xethanol was required to sell its position in Pivot at 90.5% of par value and its position in Camber at 85.5% of par value, for a total loss of $1,588,500.

73. For the foregoing reasons, Defendants are liable to Xethanol for damages in an amount of at least $1,588,500 plus interest, or such greater amount as may be determined at trial.

## Third Claim for Relief
## Common Law Fraud

74. Xethanol repeats and realleges the allegations of paragraphs 1 through 73 of the Complaint as if fully set forth herein.

75. Defendants made false representations of material fact to Northeast, which was acting as agent for Xethanol in connection with the sale of the ARS, including: that the ARS were similar to money market fund investments in that they were not subject to market risk, that DB would provide daily liquidity at par for investments in ARS, and that the value of the ARS was not in any associated with investments in "subprime" debt.

76. At the time Defendants made these false and misleading statements, Xethanol did not know and could not have known through the exercise of due care that the statements were false and misleading.

77. Defendants also omitted to state material facts to Northeast which was acting as agent to Xethanol concerning the ARS, namely that they could only be purchased by an investor that was both and QIB and QP and that the ARS had not been registered with the SEC and had no valid exemption from registration with the SEC.

78. At the time Defendants failed to state these material facts, Xethanol did not know and could not have known through the exercise of due care of the existence of these material facts.

79. Defendants made their false statements of material fact and omitted to state material facts with scienter and for the purpose and intent of inducing buyers such as Xethanol to purchase the ARS.

80. Had Xethanol known that the ARS were subject to market risk, that DB would not provide daily liquidity at par for investments in ARS, and that the ARS could

only be purchased by entities that were both a QIB and QP, Xethanol would not have purchased the ARS and thus Xethanol justifiably relied on Defendants' material false statements of fact and omissions.

81.  By reason of the foregoing conduct, Defendants fraudulently induced Xethanol to purchase the ARS.

82.  Because of the foregoing conduct, Xethanol was required to sell its position in Pivot at 90.5% of par value and its position in Camber at 85.5% of par value, for a total loss of $1,588,500.

83.  For the foregoing reasons, Defendants are liable to Xethanol for damages in an amount of at least $1,588,500 plus interest, or such greater amount as may be determined at trial.

**WHEREFORE**, the Plaintiff demands judgment:

A. on all Claims for Relief, for damages in the amount of $1,588,500 plus interest as permitted by law;

B. for the costs and disbursements of this action, including reasonable attorneys fees; and

C. for such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues in this action.


Dated: New York, New York
       February 14, 2008

                                        MEISTER SEELIG & FEIN LLP

                                        _____
                                        By: Howard S. Koh (HK 4730)
                                        2 Grand Central Tower
                                        140 East 45th Street – 19th Floor
                                        New York, New York 10017
                                        (212) 655-3500

1C38.38                                        14

TO:

Deutsche Bank Securities, Inc.
60 Wall Street
New York, New York 10005

Pivot Master Trust
c/o BNYM
White Clay Center
Route 273
Newark, Delaware 19711

Camber Master Trust
c/o BNYM
White Clay Center
Route 273
Newark, Delaware 19711

1C38.38                           15