UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

XETHANOL CORPORATION,         :

                       :

                Plaintiff,    :

                       :

     -against-                :

                       :     07 Civ. 11161 (AKH)

                       :

DEUTSCHE BANK SECURITIES INC.,   :
PIVOT MASTER TRUST and CAMBER    :
MASTER TRUST                   :

                       :

              Defendants.    :

                       :

------------------------------------------------------------x

 

**REPLY MEMORANDUM OF LAW OF DEFENDANTS DEUTSCHE BANK
SECURITIES INC., PIVOT MASTER TRUST AND CAMBER MASTER
TRUST IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

 

**Duval & Stachenfeld LLP**
300 East 42nd Street, Third Floor
New York, New York 10017
(212) 883-1700

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii-v

PRELIMINARY STATEMENT ................................................................................ 2

ARGUMENT ............................................................................................................. 4

I.    THE AMENDED COMPLAINT FAILS TO STATE
      A CLAIM FOR A VIOLATION OF SECTION
      12(a)(1) OF THE SECURITIES ACT ................................................... 4

      A. Even With All its Amended and Supplemental
         Filings, Xethanol Still Cannot Allege Privity
         Between Defendants and Xethanol ............................................. 4

      B. The Sale of the Securities Was By
         Private Placement and Did Not
         Involve the Solicitation of Xethanol ........................................ 7

II.   XETHANOL'S SECTION 10(B) AND RULE 10(B)(5)
      CLAIM MUST BE DISMISSED BECAUSE IT FAILS TO
      COMPLY WITH THE HEIGHTENED PLEADING
      REQUIREMENTS OF FED. R. CIV. P. 9(b) AND THE PSLRA ...................... 12

      A. Xethanol Has Failed to Plead Its Section
         10(b) Claim with Sufficient Particularity ................................... 12

      B. Even With the Rahav Declaration, Xethanol's
         Opposition Fails to Address the Fatal Deficiencies
         Amended Complaint's Scienter Allegations ............................. 14

         1.    Xethanol Fails to Rebut or Even Address the
               Law with Regard to Defendants' Alleged
               "Motive and Opportunity" to Commit Fraud ................... 14

         2.    The Amended Complaint Fails to Allege Any Facts
               Demonstrating Strong Circumstantial Evidence
               of Conscious Misbehavior or Recklessness ..................... 15

      C. The Opposition Reveals that the Alleged Misrepresentations
         Were Made *After* Xethanol Purchased the Securities --
         Thereby Invalidating the Rule 10(b)(5) Claim ............................ 17

      D. The Amended Complaint Does Not
         Adequately Allege Loss Causation ........................................... 18

III.    XETHANOL SHOULD NOT BE PERMITTED
        YET ANOTHER OPPORTUNITY TO REPLEAD
        BECAUSE FURTHER AMENDMENT WOULD
        BE FUTILE.............................................................................................................. 20

CONCLUSION ................................................................................................................... 21

## TABLE OF AUTHORITIES

## CASES

Abrahamson v. Fleschner
    568 F.2d 862 (2d Cir. 1977)................................................................ 19

Blue Chip Stamps v. Manor Drug Stores
    421 U.S. 723 (1975)....................................................................... 19

Brass v. Am. Film Tech., Inc.
    987 F.2d 142 (2d Cir. 1993)............................................................. 13

Capri v. Murphy
    856 F.2d 473 (2d Cir. 1988)........................................................... 7-8

Cortec Indus., Inc. v. Sum Holding, L.P.
    949 F.2d 42 (2d Cir. 1991)................................................................ 5

Degulis v. LXR Biotechnology, Inc.
    928 F. Supp. 1301 (S.D.N.Y. 1996) ................................................... 9

Dorchester Investors v. Peaks Trends Trust
    No. 99 Civ. 4696, 2003 WL 223466 (S.D.N.Y. Feb. 3, 1996) ........................... 9, 10

Ellison v. American Image Motor Co., Inc.
    36 F. Supp. 2d 628 (S.D.N.Y. 1999) ................................................... 7

Festa v. Local 3 Intern. Broth. of Elec. Workers
    905 F.2d 35 (2d Cir. 1990)............................................................. 13

Gustafson v. Alloyd Co., Inc.
    513 U.S. 561 (1995)............................................................. 8, n.4, 9

In re APAC Teleservice, Inc. Sec. Litig.
    No. 97 Civ. 9145, 1999 WL 1052004 (S.D.N.Y. Nov. 19, 1999) ....................... 9

In re Cross Media Mktg. Corp. Sec. Litig.
    314 F. Supp. 2d 256 (S.D.N.Y. 2004) ............................................... 15

In re Federated Dep't Stores, Inc., Sec. Litig.
    No. 00 Civ. 6362, 2004 WL 444559 (S.D.N.Y. Mar. 11, 2004) ...................... 14

In re Health Mgmt. Sys., Inc. Sec. Litig.
    No. 97 Civ. 1865, 1998 WL 283286 (S.D.N.Y. June 1, 1998)............................ 15

In re JWP Inc. Securities Litig.
    928 F. Supp. 1239 (S.D.N.Y. 1996) ................................................... 17

In re OPUS360 Corp. Securities Litigation
    No. 01 Civ. 2938, 2002 WL 31190157 (S.D.N.Y. Oct. 2, 2002) ........................ 9

In re REFCO, Inc. Securities Litigation
    503 F. Supp. 2d 611 (S.D.N.Y. 2007) ................................................ 16

In re Salomon Analyst Winstar Litig.
    No. 02 Civ. 6171, 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006) ...................... 15-16

In re Salomon Smith Barney Mutual Fund Fees Litig.
    441 F. Supp. 2d 579 (S.D.N.Y. 2006) ................................................ 19

In re Vivendi Universal, S.A. Securities Litigation
    381 F. Supp. 2d 158 (S.D.N.Y. 2003) ................................................. 8

Lentell v. Merrill Lynch & Co
    396 F.3d 161 (2d Cir. 2005) ...................................................... 18, 19

Official Comm. of the Unsecured Creditors of Color Tile, Inc. v.
Coopers & Lybrand, LLP
    322 F.3d 147 (2d Cir. 2003) ........................................................ 20

Oneida Indian Nation v. City of Sherrill
    337 F.3d 139 (2d Cir. 2003) ........................................................ 20

Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co., Inc.
    794 F. Supp. 1265 (S.D.N.Y. 1992) ................................................. 10

Pinter v. Dahl
    486 U.S. 622 (1988) ............................................................... 4, 5

Schwartz v. Novo Industri, A/S
    658 F. Supp. 795 (S.D.N.Y. 1987) .................................................. 17

Shain v. Duff & Phelps Credit Rating Co.
    915 F. Supp. 575 (S.D.N.Y. 1996) ................................................. 8, 10

Sheppard v. TCW/DW Term Trust 2000
    938 F. Supp. 171 (S.D.N.Y. 1996) .................................................. 13

Wilson v. Saintine Exploration and Drilling Corp.
    872 F.2d 1124 (2d Cir. 1989) ................................................... 5, 8, n.4

<u>Wright v. Ernst & Young LLP</u>
     152 F.3d 169 (2d Cir. 1998)...................................................................... 13

<u>Zucker v. Salaski</u>
     963 F. Supp. 301 (S.D.N.Y. 1997) ..................................................... 16, n.6

## STATUTES

15 U.S.C. §77l(a)(1) ............................................................................... <u>passim</u>

15 U.S.C. §77l(a)(2) ............................................................................... <u>passim</u>

15 U.S.C. § 78j(b) .............................................................................................. 17

15 U.S.C. § 78u-4(b) ............................................................................. <u>passim</u>

## RULES

Fed. R. Civ. P. 9(b) ............................................................................... <u>passim</u>

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1

Fed. R. Civ. P. 15(a) ........................................................................................ 20

17 C.F.R. § 240.10b-5 ........................................................................... <u>passim</u>

## TREATISES

2 James Wm. Moore et al., <u>Moore's Federal Practice</u> §12.34 (3d ed. 2007)................. 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                             :

XETHANOL CORPORATION,            :

                        Plaintiff,     :

       -against-                   :

                                             :     07 Civ. 11161 (AKH)

DEUTSCHE BANK SECURITIES INC.,    :
PIVOT MASTER TRUST and CAMBER
MASTER TRUST,                   :

                     Defendants.   :

------------------------------------------------------------ x

## REPLY MEMORANDUM OF LAW OF DEFENDANTS DEUTSCHE BANK SECURITIES INC., PIVOT MASTER TRUST AND CAMBER MASTER TRUST IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Deutsche Bank Securities Inc. ("Deutsche Bank"), Pivot Master Trust

("Pivot"), and Camber Master Trust ("Camber" and collectively, the "defendants"),

respectfully submit this reply memorandum of law in further support of their motion to

dismiss the amended complaint (the "Amended Complaint") of plaintiff Xethanol

Corporation ("plaintiff" or "Xethanol") for failure to state a claim upon which relief may be

granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for failure to

plead fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil

Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)

(the "PSLRA").

## PRELIMINARY STATEMENT

In the six months that have elapsed since filing this action, Xethanol remains unable

to provide a single statement, allegation or document showing that it had any communication

with these defendants, purchased securities directly from these defendants, or was solicited

by these defendants to purchase securities.  Xethanol's failure at this stage proves fatal to its

claim under Section 12(a)(1) of the Securities Act, because to recover damages a plaintiff

must directly purchase the security from the defendant, or be directly and personally solicited

by the defendant.

Instead, in what can only be construed as an admission that its Amended Complaint is

deficient, Xethanol has responded to the motion to dismiss by submitting extraneous and

supplemental declarations and exhibits -- namely, the Declaration of Boaz Rahav, dated May

21, 2008 (the "Rahav Decl.") (which remarkably attempts to allege new facts) and the

Declaration of Howard S. Koh, dated May 23, 2008 (the "Koh Decl.").   These "supplemental"

declarations are not appropriate for a motion to dismiss and should be disregarded by the

Court.  But even if the Court were to consider them, they do little more than confirm that the

only fair reading of the Amended Complaint is that Deutsche Bank sold securities directly to

Northeast Securities, Inc. ("Northeast") and that all communications concerning those

securities occurred solely between Deutsche Bank and Northeast -- not Xethanol.

Accordingly, Xethanol has no standing under Section 12(a)(1) of the Securities Act to sue

these defendants.

Xethanol strains to divert attention from this fatal defect by arguing that Deutsche

Bank was the "seller" of the securities to which Xethanol ultimately acquired title -- a point

that, for purposes of this motion, defendants do not, and need not, dispute.  For purposes of a

Section 12(a)(1) claim, unless Deutsche Bank sold directly to Xethanol, Deutsche Bank's status as a "seller" and Xethanol's status as a subsequent purchaser who ultimately acquired "title" to the same securities, does not allow Xethanol to interpose a claim against Deutsche Bank, Pivot or Camber.

Also, in an effort to escape Section 12(a)(1)'s express "privity" requirement, Xethanol argues that defendants solicited Xethanol to purchase the securities, and that the alleged solicitation need not be direct and personal under the law. In so arguing, Xethanol relies on cases under Section 12(a)(2), involving the sale of <u>public</u> securities, not a private placement (as here). Defendants are not able to cite any case involving a private placement sale where a seller was held to have "solicited" a purchaser with whom it had no contact. Nor does Xethanol identify any contact it had with any of these named defendants. As set forth more fully below, therefore, Xethanol's Section 12(a)(1) claim must be dismissed.

Separately, Xethanol's belated attempt to bolster its Section 10(b) and common law fraud claims through the submission of the Rahav Declaration is contrary to the basic federal procedural requirement that the complaint itself must allege a viable claim for relief. Accordingly, as set forth in defendants' moving brief, and reiterated below, both of Xethanol's fraud claims must be dismissed because the Amended Complaint still fails to provide any detail about the "who, when, where and how" of the alleged misrepresentations and omissions, and therefore fails to comply with the heightened pleading requirements of both Fed. R. Civ. P. 9(b) and the PSLRA.

Further, Xethanol does not adequately respond to the Amended Complaint's failure to plead particularized facts sufficient to establish the "scienter" element of its Section 10(b) claim. Xethanol simply ignores the overwhelming judicial authority presented in defendants'

moving brief demonstrating this Circuit's refusal to recognize allegations of scienter premised on "motives" of economic self-interest, and repeats this flawed argument in its opposition brief (the "Opposition"). Xethanol's separate failure to plead particular facts to support a finding of "conscious misbehavior" or "recklessness" on the part of the defendants is likewise fatal to its Rule 10(b)(5) claim.

In addition, Xethanol's improper attempt to cure pleading deficiencies through the Rahav Declaration has instead highlighted an additional fundamental flaw in its securities fraud claim under Section 10(b). According to the Rahav Declaration, the alleged "misrepresentations" occurred one month <u>after</u> Xethanol had purchased the auction rate securities, which confirms that Xethanol's Section 10(b) claim fails to satisfy the requirement that the misrepresentations be made "in connection with the purchase or sale" of the auction rate securities. This deficiency alone mandates dismissal of Xethanol's Rule 10(b)(5) claim.

Finally, the Amended Complaint's failure to plead particularized facts establishing "loss causation" -- a causal connection between Xethanol's alleged loss and defendants' alleged misstatements and omissions -- warrants dismissal of Xethanol's Rule 10(b)(5) claim.

## ARGUMENT

## POINT I

### THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR A VIOLATION OF SECTION 12(a)(1) OF THE SECURITIES ACT

**A.     Even With All its Amended and Supplemental Filings, Xethanol
Still Cannot Allege Privity Between Defendants and Xethanol**

Xethanol correctly cites <u>Pinter v. Dahl</u>, 486 U.S. 622, 108 S. Ct. 2063 (1988), the Supreme Court's seminal case under Section 12(a)(1), but ignores its well recognized pronouncement that Section 12(a)(1) "imposes liability on only the buyer's <u>immediate seller</u>;

remote purchasers are precluded from bringing actions against remote sellers. Thus, a buyer cannot recover against his seller's seller." Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 49 (2d Cir. 1991) (emphasis in original) (quoting Pinter, 486 U.S. at 643). Simply put, the absence of a "buyer-seller relationship not unlike traditional contractual privity" directly between defendants and Xethanol renders Xethanol's Section 12(a)(1) claim defective as a matter of law. See Wilson v. Saintine Exploration and Drilling Corp., 872 F.2d 1124, 1125 (2d Cir. 1989) (quoting Pinter, 486 U.S. at 642).

Despite all of its amended and supplemental submissions, Xethanol remains unable to allege or identify a single statement or document showing that any of the defendants were the immediate seller of the securities to Xethanol. Indeed, aside from a couple of conclusory allegations that are belied by actual factual allegations in the Amended Complaint, the only fair reading of the Amended Complaint is that defendants sold the auction rate securities at issue to Northeast -- an entity Xethanol has elected not to sue -- and that all communications concerning those securities were between defendants and Northeast.

Knowing this, Xethanol intentionally distorts the governing law under Section 12(a)(1) by arguing that because Deutsche Bank sold auction rate securities to which Xethanol ultimately acquired title, defendants are "sellers" under Section 12(a)(1). See Opp. at 8. Xethanol's argument is erroneous -- simply put, defendants must have sold directly to Xethanol to be considered a "seller" subject to suit by Xethanol under Section 12(a)(1). Thus, defendants do not (and need not) dispute whether Deutsche Bank was a "seller" of these auction rate securities or whether Xethanol, ultimately, acquired title to the auction rate securities. Even accepting these allegations as true, the Amended Complaint is fatally

flawed because it is still devoid of facts that show that defendants sold the securities directly to Xethanol.[1]

In addition to mischaracterizing the applicable law, Xethanol tries to rescue its claims by submitting the declaration from a Managing Director of Northeast and from Xethanol's litigation counsel. For the reasons set forth below, these "supplemental" declarations are not appropriate for a motion to dismiss and should be disregarded by the Court. Even if the Court were to consider the declarations, however, they do little more than confirm the insufficiency of plaintiff's claims, including the Section 12(a)(1) claim. The entirety of the Rahav Declaration, like the Amended Complaint, refers to pre- and post-sale communications between Deutsche Bank and Northeast, further demonstrating that Northeast -- not Xethanol -- purchased the securities from Deutsche Bank. By way of example, Rahav declares the following:

- "Northeast placed the orders for Xethanol's purchase of the Pivot-1 and Camber-8 auction rate securities[.]" Rahav Decl. at ¶ 3.

- "When Northeast placed these orders . . ." Id.

- "[O]n June 4, 2007, Northeast's trader telephoned DB's auction bond desk and placed an order for $6.8 million of the Pivot 1 ARS[.]" Id. at ¶ 4.[2]

- "On June 13, 2007, Northeast's trader telephoned DB's auction bond desk and placed an order for $6.5 million of Camber 8[.]" Id.

- "Before Northeast placed the orders for the ARS. . ." Id. at ¶ 8.

---

[1] The Amended Complaint is also devoid of facts which show that Deutsche Bank knew or should have known that, when selling to Northeast, it was passing title to Xethanol. While that is not the governing standard (i.e., a direct sale between defendants and Xethanol still must be alleged), it is telling that Xethanol cannot even allege how or why Deutsche Bank "knew or should reasonably have known" (Amended Complaint at ¶ 37) that Northeast was acting as a broker for Xethanol.

[2] Of course, those portions of the Rahav Declaration detailing alleged statements or actions of Northeast's unidentified trader are impermissible hearsay.

It is telling that in opposing defendants' motion to dismiss, Xethanol only seeks to offer a declaration from a Managing Director of Northeast, not anyone from Xethanol.[3] Since Xethanol did not buy the securities from Deutsche Bank, no one at Xethanol has the personal knowledge to swear to the details of the purchase.

It is also telling that both the Rahav Declaration and the Koh Declaration include a series of exhibits. While the exhibits are extraneous and irrelevant to this motion, Xethanol does not attach or even reference a single sales order, trade confirmation or trade ticket (or any other document for that matter) that lists or identifies Deutsche Bank, Pivot or Camber as the seller and Xethanol as the buyer of the auction rate securities at issue. No such evidence exists, and therefore Xethanol does not make such factual allegations in its Amended Complaint. As a matter of law, therefore, Xethanol lacks standing to assert a claim against defendants under Section 12(a)(1), and the Section 12(a)(1) claim should be dismissed with prejudice.

**B.    The Sale of the Securities Was By Private Placement
and Did Not Involve the Solicitation of Xethanol**

Even after all of its amended and supplemental filings, Xethanol still cannot allege that is was solicited by Deutsche Bank, Pivot or Camber. As noted in defendants' initial moving brief, as a matter of law, "persons are not liable under § 12 . . . unless they <u>directly or personally</u> solicit the buyer." <u>Ellison v. American Image Motor Co., Inc.</u>, 36 F. Supp. 2d 628, 638 (S.D.N.Y. 1999) (internal citation omitted) (emphasis added); <u>see Capri v. Murphy,</u>

---

[3] Interestingly, the Chairman of the Board of Directors of Xethanol (William P. Behrens) is also the Vice-Chairman of the Board of Northeast. This may explain why Xethanol was able to obtain a supplemental declaration from Northeast and also why Xethanol chose to sue Deutsche Bank, Pivot and Camber (with which it is not in privity) instead of Northeast (with which it is in privity). Notably, Xethanol has chosen not to submit a declaration on behalf of the Northeast trader who had personal knowledge of the alleged factual allegations surrounding these transactions.

856 F.2d 473, 479 (2d Cir. 1988) (holding that plaintiff must show that defendants "actually solicited" plaintiffs); Shain v. Duff & Phelps Credit Rating Co., 915 F. Supp. 575, 582 (S.D.N.Y. 1996) (dismissing the Section 12 claim because plaintiff never alleged that defendant "directly solicited" him, nor alleged that defendant ever had any direct communication with the plaintiff, as opposed to allegations concerning defendant's communications with two securities brokers who subsequently communicated directly with plaintiff).

Despite this unambiguous pleading requirement, plaintiff attempts to argue that actual communications between the plaintiff and defendant are not required to state a claim under Section 12(a)(1), provided that the defendant otherwise solicited the purchase of the securities. See Opp. at 11. As applied to a private placement offering, such as at issue here, this is clearly incorrect.

In support of its argument, plaintiff cites a series of cases, none of which involves Section 12(a)(1), and which are flatly distinguishable on the grounds that the securities at issue in each case were offered for sale on public markets -- not by private placement.[4] See In re Vivendi Universal, S.A. Securities Litigation, 381 F. Supp. 2d 158, 186 (S.D.N.Y. 2003) (finding that defendant's Chief Executive Officer was a statutory "seller" of public

---

[4] Plaintiff also cites Wilson v. Saintine Exploration and Drilling Corp., 872 F.2d 1124, 1126 (2d Cir. 1989) for the proposition that solicitation of the purchaser need not be direct or personal. While that case did involve a private placement (unlike all the others cited by Xethanol), the Court expressly held that there was no actionable solicitation by the defendant. Id. at 1127. In particular, the Court found that the defendant was "collateral" to the sale in question. Id. Here, defendants were not in privity with Xethanol, did not solicit Xethanol and, therefore, like the defendant in Wilson, are "collateral" to the sale in question (i.e., the sale from Northeast to Xethanol). Further, while Wilson considered claims related to a private placement sale under Section 12(2) (the predecessor to 12(a)(2)), the Supreme Court has since held that Section 12(a)(2) applies only to misrepresentations made in public offerings. See Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 571-72, 115 S. Ct. 1061, 1063 (1995). Accordingly, to the extent Xethanol relies upon cases involving Section 12(a)(2), including Wilson, those cases have no applicability here.

securities under Section 12(a)(2)); <u>Dorchester Investors v. Peaks Trends Trust</u>, No. 99 Civ. 4696, 2003 WL 223466, at *1 (S.D.N.Y. Feb. 3, 1996) (involving the initial <u>public</u> offering of 5.3 million Trust Enhanced Dividend Securities); <u>In re OPUS360 Corp. Securities Litigation</u>, No. 01 Civ. 2938, 2002 WL 31190157, at *1  (S.D.N.Y. Oct. 2, 2002) (involving the initial <u>public</u> offering of 7.7 million shares of stock); <u>Degulis v. LXR Biotechnology, Inc.</u> 928 F. Supp. 1301, 1307 (S.D.N.Y. 1996) (involving the initial <u>public</u> offering of common stock).

In a public offering, the solicitation is universal (<u>i.e.</u>, the public at large is invited to purchase).  Naturally, there is less likelihood of or need for direct or personal solicitation between buyer and seller in a public offering.  Accordingly, the scope of solicitation is broad.  <u>See generally</u> <u>In re APAC Teleservice, Inc. Sec. Litig.</u>, 1999 WL 1052004, at *11 (S.D.N.Y. Nov. 19, 1999) (<u>quoting</u>, <u>Gustafson</u>, 513 U.S. at 562) (holding in a Section 12(a)(2) claim that "the term prospectus [in contrast to a private placement memorandum] refers to a document soliciting the <u>public</u> to acquire securities.") (emphasis added).  In a private placement, however, the solicitation is targeted (<u>i.e.</u>, potential purchasers are specifically and directly offered an opportunity to purchase).  Unlike a Section 12(a)(2) claim, the mere preparation, signing or even issuance of a private placement memorandum under Section 12(a)(1) is insufficient to constitute a solicitation unless it is directed by the seller to the immediate purchaser.  Accordingly, the scope of the solicitation is generally smaller and more discernable than a public sale of securities.

Xethanol relies heavily on an unpublished opinion, <u>Dorchester Investors</u>, arguing that it sets the standard for whether a complaint sufficiently alleges solicitation under Section 12(a)(1).  <u>See</u> Opp. at 11.  <u>Dorchester Investors</u> involves claims under Section 12(a)(2) and

the so-called "four factors" Xethanol identifies in <u>Dorchester Investors</u> involve <u>public</u>

<u>offerings</u>, not private placements.  <u>See Dorchester Investors</u>, 2003 WL 223466, at *2.

Indeed, only one of the four factors listed in <u>Dorchester Investors</u> is even remotely alleged in

the Amended Complaint (<u>i.e.</u>, that defendants prepared private placement memoranda --

which, by analogy, Xethanol improperly equates to the preparation of a registration

statement).  <u>See</u> Amended Complaint at ¶ 22.  Accordingly, the purported standard set forth

in <u>Dorchester</u> is wholly inapplicable here.

 Unlike the cases relied upon by Xethanol, here there is no allegation in the Amended

Complaint that the public at large was solicited to purchase the auction rate securities.

Instead, all that is alleged in the Amended Complaint is that the defendants prepared private

placement memoranda.  <u>See</u> Amended Complaint at ¶ 22.  This is not sufficient to give rise

to an inference that Deutsche Bank, Pivot or Camber actively solicited plaintiff.  <u>See</u>

<u>Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co., Inc.</u>, 794 F. Supp. 1265, 1284

(S.D.N.Y. 1992) (holding that defendant's participation in the preparation of an option

disclosure statement was not a sufficient basis for an inference that defendants "actively

solicited" plaintiffs' purported options purchase).  Nor is it sufficient as a matter of law to

allege that Xethanol was solicited through its broker.  <u>See</u> <u>Shain</u>, 915 F. Supp. at 584

(holding that defendant was not a "statutory seller" under Section 12(a)(1) where plaintiff,

like Xethanol, failed to plead any instance of direct contact between himself and defendant,

other than through brokers).

 In addition to relying upon a series of cases under Section 12(a)(2), plaintiff also

relegates to a mere footnote its discussion of defendants' solicitation cases, which each

involve Section 12(a)(1).  This is because plaintiff cannot distinguish those cases -- other

10

than by pointing out that the cases involve other actors in the securities market, such as rating agencies and market makers.  This does not change the fact that a showing of direct and personal solicitation is necessary to state a claim in a private offering case under Section 12(a)(1).

Setting aside the clear distinction between public and private solicitations, Xethanol's solicitation argument also fails as a matter of simple timing and logic.  As noted in defendants' moving papers, Xethanol expressly admits in the Amended Complaint that "Xethanol was never provided a copy of either PPM [private placement memorandum] prior to acquiring its positions in the ARS."  See Amended Complaint at ¶ 39.  In its supplemental declaration, Northeast states that it did not obtain the private placement memoranda until "after the purchase of the auction[.]" Rahav Decl. at ¶ 7. (emphasis added).  If neither Xethanol nor Northeast received the private placement memoranda before the purchase of the auction rate securities, Xethanol cannot claim to have relied on the private placement memoranda in buying the auction rate securities -- thereby mooting the underlying rationale behind its argument that Deutsche Bank "solicited" Xethanol.

Because Xethanol does not -- and cannot -- allege any direct or personal solicitation by Deutsche Bank, Pivot or Camber, Xethanol may not maintain a Section 12(a)(1) claim against any of them.  Indeed, even if Xethanol could allege direct or personal solicitation by the defendants, its own Amended Complaint (particularly as supplemented) makes clear that any purported solicitation occurred after the sale of the securities.  Accordingly, Xethanol's Section 12(a)(1) claim fails and should be dismissed with prejudice.

**POINT II**

**XETHANOL'S SECTION 10(B) AND RULE 10(B)(5) CLAIM MUST BE DISMISSED BECAUSE IT FAILS TO COMPLY WITH THE HEIGHTENED PLEADING REQUIREMENTS OF FED. R. CIV. P. 9(b) AND THE PSLRA**

**A.    Xethanol Has Failed to Plead Its Section 10(b) Claim with Sufficient Particularity**

As set forth in defendants' moving brief, Xethanol's failure to plead with particularity the "who, when, where and how" of the alleged misrepresentations and omissions pursuant to Fed. R. Civ. P. 9(b) and the PSLRA proves fatal to its Rule 10(b)(5) cause of action. In response to that glaring deficiency, Xethanol improperly has submitted the five-page "supplemental" Rahav Declaration, which seeks to interpose new factual allegations in a belated attempt to meet the heightened pleading requirements necessary for a Rule 10(b)(5) claim.

In essence, the Rahav Declaration constitutes an attempt to supplement, or further "amend," the Amended Complaint. This tactic is impermissible as a matter of law. As an initial matter, it is an improper attempted "end run" around the PSLRA's express statutory mandate that "the complaint" -- and only "the complaint" -- "shall" contain factual allegations sufficient to state a claim. See 15 U.S.C. § 78u-4(b)(1) and (2) (emphasis added). The use of extraneous submissions should result in mandatory dismissal -- particularly here, where Xethanol readily acknowledges that "the Rahav Dec. [not the Amended Complaint] supplies the who, when, where and how of Defendant's fraud with sufficient specificity to meet the requirements of Fed. R. 9(b) and the PSLRA." 15 U.S.C.

§ 78u-4(b)(3); See Opp. at 15 (internal comments and emphasis added).

In deciding a motion to dismiss, courts may only consider the factual allegations in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and

matters of which judicial notice may be taken.  See Brass v. Am. Film Tech., Inc., 987 F.2d

142, 150 (2d Cir. 1993).  "Allegations made outside of the complaint are not properly before

the court on a motion to dismiss."  Sheppard v. TCW/DW Term Trust 2000, 938 F. Supp.

171, 178 (S.D.N.Y. 1996) (citations omitted).  Accordingly, courts routinely disregard efforts

by plaintiffs to rely upon other information in order to avoid dismissal.  See, e.g., Wright v.

Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (affirming dismissal of securities

fraud action where the district court ignored plaintiff's factual allegations introduced for the

first time in opposition memoranda to the motion to dismiss); Festa v. Local 3 Intern. Broth.

of Elec. Workers, 905 F.2d 35, 37-38 (2d Cir. 1990) (affirming district court's refusal to

consider affidavits on motion to dismiss); 2 James Wm. Moore et al., Moore's Federal

Practice §12.34 (3d ed. 2007) ("The court may not, for example, take into account additional

facts asserted in a memorandum opposing the motion to dismiss[.]").

As argued at length in defendants' moving brief, Rule 9(b) and the PSLRA's pleading

requirements were enacted as an exception to the liberal pleading standards governing most

claims for several important and salutary policy reasons.  To allow a plaintiff to plead a

securities fraud claim, without the requisite particularity, in the hope that it can later file an

affidavit in opposition to a motion to dismiss would eviscerate Rule 9(b) and the PSLRA's

requirement that a complaint's fraud claim be plead with particularity.

Based on the foregoing, Xethanol may not rely on the Rahav Declaration to remedy

its deficient factual allegations.  Accordingly, defendants object to Xethanol's submission of

the Rahav Declaration and respectfully request that the Court decline to consider it in ruling

on the pending motion to dismiss.[5]

**B.    Even With the Rahav Declaration, Xethanol's Opposition Fails to Address the Fatal Deficiencies of the Amended Complaint's Scienter Allegations**

Defendants established in their moving brief that Xethanol's Section 10(b) claim

should be dismissed for the independent reason that the Amended Complaint falls woefully

short of pleading particularized facts giving rise to a "strong inference" of "scienter." See

Def. Brief at 18-22. As set forth in defendants' moving brief, to plead the "strong inference"

of intent, plaintiff must allege either: (a) that defendants had both motive and opportunity to

commit fraud; or (b) facts constituting strong circumstantial evidence of conscious

misbehavior or recklessness. In re Federated Dep't Stores, Inc., Sec. Litig., 2004 WL

444559, at *3 (S.D.N.Y. Mar. 11, 2004). The Opposition confirms that under either legal

standard, Xethanol has failed to allege facts supporting its intentional fraud claim.

**1.    Xethanol Fails to Rebut or Even Address the Law with Regard to Defendants' Alleged "Motive and Opportunity" to Commit Fraud**

As set forth in defendants' moving brief, Xethanol's lone conclusory assertion that

defendants "made their false statements of material fact and omitted to state material facts

with scienter and for the purpose and intent of inducing buyers such as Xethanol to purchase

the ARS" (Amended Complaint at ¶ 69) does not satisfy the PSLRA's "strong inference"

requirement.

---

[5] Even if this Court was to consider the Rahav Declaration -- which it should not -- it is notable that both the Rahav Declaration and the Opposition assert only that the alleged misrepresentations were made by Deutsche Bank employee Andreas Ponce. See Opp. at 15; Rahav Decl. at ¶ 8. Accordingly, as no misrepresentations have been attributed to either Pivot or Camber, Xethanol's Rule 10(b)(5) and common law fraud claims must be dismissed as to both of these defendants.

In their moving brief, defendants cited numerous decisions of this Court soundly rejecting "motive" allegations of economic self-interest. See, e.g., In re Cross Media Mktg. Corp. Sec. Litig., 314 F. Supp. 2d 256, 265 (S.D.N.Y. 2004) ("the alleged desires to raise additional capital in a private placement or to maintain compliance with the financial covenants of a company loan agreement are similarly inadequate to support an allegation of an intent to commit fraud"); In re Health Mgmt. Sys., Inc. Sec. Litig., No. 97 Civ. 1865, 1998 WL 283286, at *6 n.4 (S.D.N.Y. June 1, 1998) (mere "[d]esire to consummate [a] corporate transaction does not constitute a motive for securities fraud")

In response, the Opposition does not address, much less attempt to distinguish, the numerous cases previously cited by defendants nor the controlling law of this jurisdiction. Indeed, the Opposition simply reaffirms that defendants' alleged "motive" was "to sell the ARS by any means necessary because they earned commissions on each sale." See Opp. at 16.

As the Opposition confirms that Xethanol alleges nothing more than economic motives possessed by every corporation, entity or person, Xethanol accordingly has failed to plead facts sufficient to show that Deutsche Bank, Pivot or Camber had a "motive and opportunity" to commit securities fraud.

### 2. The Amended Complaint Fails to Allege Any Facts Demonstrating Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness

As set forth in defendants' moving brief, Xethanol has failed to allege strong circumstantial evidence of "conscious misbehavior" or "recklessness." Specifically, as to conscious misbehavior, a plaintiff must plead particular facts, not conclusory allegations, that "point strongly to an inference that defendants harbored an intent to deceive, manipulate or defraud." In re Salomon Analyst Winstar Litig., 2006 WL 510526, at *7, n.11 (S.D.N.Y.

Feb. 28, 2006).  Alternatively, to establish recklessness, a plaintiff must allege facts

demonstrating that defendants' conduct was "highly unreasonable, representing an extreme

departure from the standards of ordinary care to the extent that the danger was either known

to the defendant or so obvious that the defendant must have been aware of it."  In re REFCO,

Inc. Securities Litigation, 503 F. Supp. 2d 611, 648 (S.D.N.Y. 2007).[6]

Xethanol contends that the "making of statements clearly at odds with the disclosure

in the draft PPMs and the failure to take any steps to ensure that Xethanol was qualified to

purchase the ARS . . . creates a strong, powerful and cogent inference of conscious

misbehavior or recklessness."  See Opp. at 17.  Xethanol's argument, however, is premised

upon a flawed and unsubstantiated allegation that defendants even knew of Xethanol.  This

presumption is exclusively dependent upon the Amended Complaint's conclusory allegation

that "DB [Deutsche Bank] knew or should reasonably have known that when Northeast

purchased the ARS DB [sic] was not acting for its own account and instead was acting as a

broker purchasing the ARS for a client."  See Amended Complaint at ¶ 37.

However, the Amended Complaint is bereft of any -- let alone, particular -- facts

explaining how or why the defendants should have known that Northeast was acting as

Xethanol's (or anyone's) broker-dealer.  Absent such fundamental allegations, Xethanol's

bald and conclusory allegations of scienter based on defendants' alleged "conscious

misbehavior" and "recklessness" are insufficient and justify dismissal of the Section 10(b)

claim.

---

[6] Moreover, as set forth in defendants' moving brief, a plaintiff attempting to satisfy scienter by alleging
conscious misbehavior or recklessness has a greater pleading burden than one alleging motive and
opportunity.  See Zucker v. Salaski, 963 F. Supp. 301, 309 (S.D.N.Y. 1997).

**C.      The Opposition Reveals that The Alleged Misrepresentations Were Made *After* Xethanol Purchased the Securities -- Thereby Invalidating the Rule 10(b)(5) Claim**

In order for a misrepresentation or omission to be actionable under § 10(b) and Rule 10(b)(5), the challenged statement must have been made "in connection with the purchase or sale of . . . [a] security." 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  Where fraudulent statements or omissions occur <u>after</u> the decision to buy or sell securities, those statements or omissions are not deemed "in connection with" such purchases or sales.  <u>See</u> <u>In re JWP Inc. Securities Litig.</u>, 928 F. Supp. 1239, 1253 (S.D.N.Y. 1996) ("Misrepresentations made after the purchase or sale in question cannot satisfy the 'in connection with' requirement."); <u>Schwartz v. Novo Industri, A/S</u>, 658 F. Supp. 795, 799 (S.D.N.Y. 1987) ("statements made . . . subsequent to plaintiff's purchase [ ] are not in themselves actionable under Section 10(b)").

The Amended Complaint alleges that Xethanol purchased the auction rate securities in June 2007.  <u>See</u> Amended Complaint at ¶¶ 32-33.  As set forth in defendants' moving brief, the Amended Complaint is devoid of any allegations demonstrating "when" the alleged misrepresentations occurred.  In an attempt to cure this defect through the submission of the Rahav Declaration, Xethanol has instead highlighted another fatal flaw in its Rule 10(b)(5) claim.  Indeed, the Rahav Declaration and the Opposition assert -- for the first time -- that the alleged misrepresentations by Deutsche Bank occurred in mid-July 2007 -- one month <u>after</u> Xethanol purchased the auction rate securities at issue.  <u>See</u> Rahav Decl. at ¶ 8 and Opp. at 15.  Accordingly, as the alleged misrepresentations indisputably occurred after Xethanol purchased the auction rate securities, its Rule 10(b)(5) claim fails as a matter of law.

**D.**     **The Amended Complaint Does Not Adequately Allege Loss Causation**

In this Circuit, a Section 10(b) plaintiff "must prove both transaction causation and loss causation." Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005). "Transaction causation is akin to reliance, and requires only an allegation that 'but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction.'" Id. (citation omitted). "Loss causation 'is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.'" Id. (citation omitted). "To establish loss causation, 'a plaintiff must allege . . . that the subject of the fraudulent statement or omission was the cause of the actual loss suffered,' i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." Id. Thus, a plaintiff must plead a clear causal connection between the loss and the alleged misrepresentations and omissions.

Xethanol has failed to meet the pleading requirements for "loss causation" under the PSLRA. Xethanol offers no facts, particularized or otherwise, establishing any causal connection between its alleged loss and defendants' alleged failure to inform Xethanol that it must be a QIB or QP in order to purchase the auction rate securities.[7] Indeed, whether defendants failed to inform Xethanol that it had to be a QIB or QP is of no moment, because that alleged omission did not cause Xethanol's loss, the market did. Rather, Xethanol must demonstrate how defendants' alleged failure to inform Xethanol that it had to be a QIB or QP caused the alleged market loss it has suffered. Xethanol has failed to do so. In fact,

---

[7] As set forth above, the Rahav Declaration demonstrates that the alleged misrepresentations occurred one month after Xethanol purchased the ARS. Accordingly, as plaintiff cannot even demonstrate that it relied on these alleged misrepresentations when it purchased the ARS, any "loss causation" analysis with respect to these misrepresentations would be futile.

Xethanol admits that its loss here is attributable to the "disruption in the credit markets [that] coincided with the failure of auctions for the ARS," rather than any misrepresentations or omissions by the defendants. See Amended Complaint at ¶ 9.

Further, the Amended Complaint's allegation that Xethanol "would not have purchased the ARS" had Xethanol "known that the ARS were subject to market risk, that DB would not provide daily liquidity at par for investments in ARS, and that the ARS could only be purchased by entities that were both a QIB and QP," merely constitutes "transaction causation" -- not "loss causation." See Lentell, 396 F.3d at 172; In re Salomon Smith Barney Mutual Fund Fees Litig., 441 F. Supp. 2d 579, 590 (S.D.N.Y. 2006) ("[w]ith regard to Plaintiffs' assertion that they would not have purchased the Fund shares had they known of the complained-of practices, this assertion makes out transaction causation -- not loss causation"). As noted above, the absence of both "transaction causation" and "loss causation" is fatal to Xethanol's Section 10(b) claim.

Finally, Xethanol's contention -- asserted for the first time in its Opposition -- that its "loss was proximately caused by" defendants' misrepresentations and omissions, absent which plaintiff "would have sold its position in the ARS sooner," is similarly insufficient to plead "loss causation" under Section 10(b). See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 737-38, 95 S. Ct. 1917 (1975) (where a misrepresentation or omission causes a person to retain shares previously purchased, rather than purchase new shares or sell already owned ones, the shareholder does not have standing to bring a Rule 10(b)(5) claim); Abrahamson v. Fleschner, 568 F.2d 862, 868 (2d Cir. 1977) (fraudulent inducement to retain securities is not a Rule 10(b)(5) violation because it is not directly "in connection with" any purchase or sale).

Accordingly, because Xethanol has not pleaded, and cannot plead, that the alleged misrepresentations and omissions caused its losses, its claim under Section 10(b) and Rule 10(b)(5) should be dismissed.[8]

## POINT III

## XETHANOL SHOULD NOT BE PERMITTED YET ANOTHER OPPORTUNITY TO REPLEAD BECAUSE FURTHER AMENDMENT WOULD BE FUTILE

The Court should dismiss the Amended Complaint and deny Xethanol further leave to amend its claims. Xethanol has failed repeatedly to cure the deficiencies in its pleadings, and further amendment would be futile.

As Xethanol has acknowledged, the Court has discretion to deny leave to amend when a plaintiff has failed repeatedly to cure the deficiencies in its complaint. See e.g., Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 168 (2d Cir. 2003) ("[T]he District Court did not abuse its discretion in denying . . . leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments previously allowed'"). Moreover, "[w]hile leave to amend a pleading shall be freely granted when justice so requires," the Court need not grant leave to amend where doing so would be an exercise in futility. See Fed. R. Civ. P. 15(a); Oneida Indian Nation v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003). A proposed amendment to a pleading is futile where it would be unable to withstand a motion to dismiss. Id.

Because Xethanol has effectively sought to amend the initial complaint on two occasions -- both through amendment of the initial complaint and through the submission of its supplemental and extraneous declarations in opposition to this motion -- the Court should

---

[8] As discussed in defendants' moving brief, because Xethanol's common law fraud claim suffers from the same deficiencies as Xethanol's securities fraud claim, it too must be dismissed as a matter of law.

grant defendants' motion to dismiss with prejudice and deny leave to replead. Despite its many bites at the apple, Xethanol still cannot state viable claims against these defendants. Any further opportunities to amend would continue to be futile, and would waste the time and resources of the Court and the defendants. Accordingly, the Court should dismiss Xethanol's claims against these defendants with prejudice and deny any request by Xethanol for leave to replead.

## CONCLUSION

For the reasons set forth above and in its moving papers, Deutsche Bank, Pivot and Camber respectfully request that all of the claims in the Amended Complaint be dismissed with prejudice.

Dated: New York, New York
        June 13, 2008

Respectfully submitted,

DUVAL & STACHENFELD LLP

By: _____
Allan N. Taffet, Esq. (AT-5181)
300 East 42nd Street
New York, NY 10017
Tel. No.: (212) 883-1700

Attorneys for Defendants
Deutsche Bank Securities Inc.,
Pivot Master Trust, and
Camber Master Trust

Timothy J. Pastore, Esq.
Joshua C. Klein, Esq.
    - Of Counsel -

21