Duval & Stachenfeld LLP
Attorneys for Defendants/Third-Party Plaintiffs
Deutsche Bank Securities Inc.,
Pivot Master Trust and Camber Master Trust
By:  Allan N. Taffet, Esq. (AT-5181)
     Joshua C. Klein, Esq.(JK- 4558)
300 East 42nd Street
New York, New York 10017
Tel. No.: (212) 883-1700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

XETHANOL CORPORATION,

                              Plaintiff,

          -against-

DEUTSCHE BANK SECURITIES INC.,
PIVOT MASTER TRUST and CAMBER
MASTER TRUST,

                              Defendants.

------------------------------------------------------------ x

DEUTSCHE BANK SECURITIES INC.,
PIVOT MASTER TRUST and CAMBER
MASTER TRUST,

                   Third-Party Plaintiffs,

          - against -

NORTHEAST SECURITIES, INC.,

                   Third-Party Defendant.

------------------------------------------------------------ x



**THIRD-PARTY COMPLAINT**

07 Civ. 11161 (AKH)

     ECF CASE

Defendants/Third-Party Plaintiffs Deutsche Bank Securities Inc. ("DBSI"), Pivot

Master Trust and Camber Master Trust (hereinafter collectively referred to as "Third Party

Plaintiffs"), by their attorneys, Duval & Stachenfeld LLP, as and for their Third-Party

Complaint (the "Third-Party Complaint") against third-party defendant Northeast Securities,

Inc. ("Northeast"), allege as follows:

## JURISDICTION AND VENUE

1.    This Court has supplemental jurisdiction over these third-party claims

pursuant to 28 U.S.C. § 1367, in that the third-party claims asserted herein are so related to

claims brought by the plaintiff that they form part of the same case or controversy under

Article III of the United States Constitution.

2.    Venue is proper pursuant to 28 U.S.C. § 1391(a) in the underlying action, and

therefore, no independent basis for venue is necessary in this Third-Party Complaint.

## THE PARTIES

3.    Third-party plaintiff DBSI is a corporation organized and existing under the

laws of the State of Delaware, with offices at 60 Wall Street, New York, New York 10005.

4.    Third-party plaintiff Pivot Master Trust is a statutory trust organized and

existing under the laws of the State of Delaware.  Pivot Master Trust is a limited purpose

Delaware statutory trust, formed pursuant to a Declaration of Trust and Trust Agreement

dated as of May 1, 2007, under which the Bank of New York acts as trustee for the benefit of

the registered holders of the securities issued by the trust.

5.    Third-party plaintiff Camber Master Trust is a statutory trust organized and

existing under the laws of the State of Delaware.  Camber Master Trust is a limited purpose

Delaware statutory trust, formed pursuant to a Declaration of Trust and Trust Agreement

dated as of August 2, 2006, under which the Bank of New York acts as trustee for the benefit of the registered holders of the securities issued by the trust.

6.      Third-party defendant Northeast is a financial services firm founded in 1989, with offices on Wall Street in New York City; Southbury, Connecticut; Fort Lee, New Jersey; and Pittsburgh, Pennsylvania.  Northeast's principal place of business is located at 333 Earle Ovington Blvd., Mitchel Field, New York 11553.  Northeast is a member of the Financial Industry Regulatory Authority ("FINRA").

7.      Plaintiff Xethanol Corporation ("Xethanol") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1185 Avenue of the Americas, 20th Floor, New York, New York 10036.  Plaintiff Xethanol filed an Amended Complaint in this Court on or about February 19, 2008, naming DBSI, Camber Master Trust and Pivot Master Trust as defendants (the "Underlying Action").

## FACTUAL ALLEGATIONS

8.      In or around December 2003, Northeast opened a trading account with DBSI, thus commencing its trading relationship.

9.      Northeast purchased from and sold to DBSI various securities in the ensuing years, including auction rate securities ("ARS").

10.      By e-mail dated January 17, 2007, DBSI forwarded to Rich Collins, a trader at Northeast, the Camber Private Placement Memorandum (the "Camber PPM") as well as the Camber Master Trust Series 7 and 8 Pricing Supplements.  The Camber PPM sets forth in detail a description of the Camber ARS offered for sale, and the applicable terms and conditions under which any sale of the Camber ARS to Northeast would occur.

3

11.    By e-mail dated May 2, 2007, DBSI notified Rich Collins at Northeast -- along with other specifically identified recipients of the email -- that DBSI was offering for sale ARS issued by Pivot Master Trust.  Attached to the same email were copies of the Private Placement Memorandum for the Pivot ARS (the "Pivot PPM") as well as the Pivot Series 1, 2, 3 and 4 Pricing Supplements.  The Pivot PPM sets forth in detail a description of the Pivot ARS offered for sale, and the applicable terms and conditions under which any sale of the Pivot ARS to Northeast would occur.

12.    In a section entitled "Notice to Purchasers and Transferees," both the Camber PPM and the Pivot PPM provide that the purchaser of Camber and Pivot ARS, respectively, "will be deemed to have represented and agreed" to multiple written representations, including that the Purchaser:

- understands that the Certificates [i.e., the ARS] are being offered only in a transaction not involving any public offering within the meaning of, and have not been and will not be registered under, the Securities Act of 1933, as amended (the "Securities Act"), or any securities law of any state of the United States or any other jurisdiction;

- is acquiring the Certificates for its own account or an account or accounts with respect to which it exercises sole investment discretion and it or each such account is a "Qualified Institutional Buyer" (each a "QIB") as defined in Rule 144A under the Securities Act ("Rule 144A");

- and each account for which it is purchasing the Certificates has all necessary power and authority to acquire the Certificates and such acquisition will not contravene any law, rule or regulation binding on it or such account or any investment guideline or restriction applicable to it or such account;

- in deciding whether or not to purchase the Certificates, (a) has carefully read and fully understands this Private Placement Memorandum and the Series Pricing Supplement; (b) has made its own independent evaluation, based upon such investigation and analysis as it deems appropriate, of the business prospects and creditworthiness of the Series    . . . and of the

4

terms and provisions of the Certificates and other instruments and agreements that are described or referred to in this Private Placement Memorandum and in the Series Pricing Supplement; (c) has been afforded the opportunity to ask questions of, and receive answers from, the Trustee, the Initial Purchaser and the Broker-Dealer concerning the terms of the Certificates, the offering contemplated by this Private Placement Memorandum and the Series Pricing Supplement, the Series and related matters; and (d) has the knowledge, expertise and experience in financial matters to evaluate the risks involved in purchasing the Certificates;

- understands that the Certificates will bear a restrictive legend stating that the Certificates have not been registered under the Securities Act and setting forth the restrictions on transfer of the Certificates described herein and stating that each purchaser of any Certificate will be deemed, by its acceptance thereof, to have made the representations and agreements set forth in this "Notice to Purchasers and Transferees";

- will notify any proposed purchaser of Certificates from it of the resale restrictions referred to herein and prior to its sale of the Certificates, deliver a copy of this Notice to Purchasers and Transferees to such proposed purchaser.

Camber PPM at pp. v-vi; Pivot PPM at pp. v-vi.

13.    Northeast purchased Camber ARS positions from DBSI on various occasions throughout the first several months of 2007. Specifically, Northeast purchased a $1,000,000 position in Camber ARS in February 2007; another $1,000,000 position in Camber ARS in March 2007; a $19,000,000 position in Camber ARS in April 2007; a $6,500,000 position in Camber ARS in June 2007; and a $1,000,000 position in Camber ARS in July 2007. At different times during 2007, Northeast also sold its positions in the Camber ARS at auction.

14.    DBSI interacted exclusively with Northeast in connection with each of these purchases and sales of the Camber ARS in 2007.

15.    Xethanol alleges in its Amended Complaint (the "Amended Complaint") that on June 13, 2007, Xethanol "purchased a $6,500,000 position in the" Camber ARS through Northeast as its broker.

16.    Xethanol never interacted or otherwise communicated with DBSI in connection with its alleged purchase on June 13, 2007 of a $6,500,000 position in the Camber ARS.  If Xethanol purchased a $6,500,000 position in the Camber ARS in or about June 13, 2007, such purchase was made from Northeast, exclusively, not from DBSI.

17.    Northeast purchased Pivot ARS positions from DBSI during June and July 2007.  Specifically, Northeast purchased a $6,800,000 position in Pivot ARS in June 2007; and a $1,000,000 position in Pivot ARS in July 2007.

18.    DBSI interacted exclusively with Northeast in connection with each of these purchases of the Pivot ARS in 2007.

19.    Xethanol alleges in its Amended Complaint that on June 4, 2007, Xethanol "purchased a $6,800,000 position in the" Pivot ARS through Northeast as its broker.

20.    Xethanol never interacted or otherwise communicated with DBSI in connection with its alleged purchase on June 4, 2007 of a $6,800,000 position in the Pivot ARS.  If Xethanol purchased a $6,800,000 position in the Pivot ARS in or about June 4, 2007, such purchase was made from Northeast, exclusively, not from DBSI.

21.    The Third-Party Plaintiffs had no knowledge of Xethanol's alleged connection to these ARS transactions until September 2007, when Northeast apprised the Third-Party Plaintiffs as to Xethanol's existence and Xethanol's alleged ownership of the Camber ARS and the Pivot ARS.

22.    At all times, Xethanol exclusively interacted and communicated with Northeast in connection with Xethanol's acquisition or purchase of the Pivot ARS and Camber ARS in June 2007.

23.    In its Amended Complaint, Xethanol alleges that it is neither a qualified institutional buyer ("QIB") nor a qualified purchase ("QP") as defined in Rule 144A of the Securities Act.  If, following Northeast's purchase of the $6,500,000 position in the Camber ARS from DBSI on June 13, 2007, Northeast subsequently sold to or arranged for Xethanol to hold, own or acquire from Northeast that position and Xethanol is not a QIB or QP, such sale or transfer of the Camber ARS by Northeast was done by breaching the express written representations Northeast made when DBSI sold the $6,500,000 position in Camber ARS to Northeast on or about June 13, 2007.

24.    If, following Northeast's purchase of the $6,800,000 position in the Pivot ARS from DBSI on June 4, 2007, Northeast subsequently sold to or arranged for Xethanol to hold, own or acquire from Northeast that position and Xethanol is not a QIB or QP, such sale or transfer of the Pivot ARS by Northeast was done by breaching the express written representations Northeast made when DBSI sold the $6,800,000 position in Pivot ARS to Northeast on or about June 4, 2007.

## FIRST CLAIM FOR RELIEF
### (Indemnification and Contribution)

25.    The Third-Party Plaintiffs reallege each of the foregoing paragraphs of this Third-Party Complaint as if fully set forth herein.

26.    In its Amended Complaint, Xethanol alleges that the Third-Party Plaintiffs are liable to Xethanol for damages in an amount of at least $1,588,500, plus interest, because the

Third-Party Plaintiffs offered and sold to Xethanol unregistered securities in violation of § 5 of the Securities Act.

27.    The Third-Party Plaintiffs deny that they are liable to Xethanol in any amount.

28.    If, however, the Third-Party Plaintiffs shall become obligated in any amount to Xethanol by judgment or otherwise, then the Third-Party Plaintiffs shall be entitled to indemnification and/or contribution from Northeast for all or part of any judgment or verdict or compromise rendered against the Third-Party Plaintiffs in the Underlying Action, together with attorneys' fees and costs incurred by the Third-Party Plaintiffs in the Underlying Action and in connection with this Third-Party Complaint, because Northeast would have then violated the applicable terms and conditions of the Camber PPM and Pivot PPM, which Northeast expressly represented it was adhering to, when Xethanol purchased and/or acquired from Northeast its Camber ARS and Pivot ARS in June 2007.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

29.    The Third-Party Plaintiffs reallege each of the foregoing paragraphs of this Third-Party Complaint as if fully set forth herein.

30.    In its Amended Complaint, Xethanol alleges that the Third-Party Plaintiffs are liable to Xethanol for damages in an amount of at least $1,588,500, plus interest, because the Third-Party Plaintiffs offered and sold to Xethanol unregistered securities in violation of § 5 of the Securities Act.

31.    The Third-Party Plaintiffs deny that they are liable to Xethanol in any amount.

32.    If, however, the Third-Party Plaintiffs shall become obligated in any amount to Xethanol by judgment or otherwise, then Northeast shall be unjustly enriched in that the

8

Third-Party Plaintiffs would be liable for damages caused by Northeast, because Northeast would have then violated the applicable terms and conditions of the Camber PPM and Pivot PPM, which Northeast expressly represented it was adhering to when Northeast purchased the Camber ARS and Pivot ARS in June 2007 from DBSI.

33.     The foregoing shall cause the Third-Party Plaintiffs to suffer damages in the amount $1,588,500.00, together with interest and attorneys' fees and costs incurred by the Third-Party Plaintiffs in the Underlying Action and in connection with this Third-Party Complaint.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract)

34.     The Third-Party Plaintiffs reallege each of the foregoing paragraphs of the Third-Party Complaint as if fully set forth herein.

35.     DBSI sold to Northeast a $6,500,000 position in the Camber ARS on or about June 13, 2007, subject to the applicable terms and conditions in the Camber PPM (the "June Camber Trade").

36.     DBSI sold to Northeast a $6,800,000 position in the Pivot ARS on or about June 4, 2007, subject to the applicable terms and conditions in the Pivot PPM (the "June Pivot Trade").

37.     Among the express written representations agreed to by Northeast in connection with the June Camber Trade and the June Pivot Trade, respectively, was that Northeast was acquiring the Camber ARS and Pivot ARS "for its own account or an account or accounts with respect to which it exercises sole investment discretion and it or each such

9

account is a Qualified Institutional Buyer (each a 'QIB') as defined in Rule 144A under the Securities Act ('Rule 144A')."

38.    If following DBSI's sale in June 2007 of the Pivot ARS and Camber ARS to Northeast pursuant to the Pivot PPM and the Camber PPM, Northeast subsequently sold to or arranged for Xethanol to acquire or purchase the Pivot ARS and Camber ARS and Xethanol was not a QIB, then Northeast breached the express written terms and conditions of the June Pivot Trade and the June Camber Trade, respectively.

39.    The Third-Party Plaintiffs have performed their obligations under the Pivot PPM, the Camber PPM and in connection with June Pivot Trade and the June Camber Trade.

40.    Should it be established that Xethanol is not a QIB, and the Third-Party Plaintiffs are directly liable to Xethanol for damages in the Underlying Action, then the Third-Party Plaintiffs have suffered damages in an amount to be determined at trial as a direct, proximate and actual result of Northeast's breach of its obligations and representations in connection with the June Pivot Trade and the June Camber Trade.

### FOURTH CLAIM FOR RELIEF
**(Promissory Estoppel)**

41.    The Third-Party Plaintiffs reallege each of the foregoing paragraphs of the Third-Party Complaint as if fully set forth herein.

42.    Among the express written representations agreed to by Northeast in connection with the June Camber Trade and the June Pivot Trade was that it was acquiring the Camber ARS and Pivot ARS "for its own account or an account or accounts with respect to which it exercises sole investment discretion and it or each such account is a Qualified

10

Institutional Buyer (each a 'QIB') as defined in Rule 144A under the Securities Act ('Rule 144A')."

43.    Northeast made clear and unambiguous written representations to the Third-Party Plaintiffs as set forth in the Camber PPM and the Pivot PPM in connection with the June Pivot Trade and the June Camber Trade.

44.    Northeast expected and intended that the Third-Party Plaintiffs would rely on Northeast's written representations set forth in the Camber PPM and Pivot PPM, including the written representation that it was acquiring the Pivot ARS and the Camber ARS "for its own account or an account or accounts with respect to which it exercises sole investment discretion and it or each such account is a Qualified Institutional Buyer (each a "QIB") as defined in Rule 144A under the Securities Act ("Rule 144A")."

45.    Northeast knew or should have known that it was sold the Pivot ARS and Camber ARS in June 2007 based upon DBSI's reliance on Northeast's written representations.

46.    DBSI, Pivot Master Trust and Camber Master Trust acted reasonably in relying on Northeast's written representations in connection with the June Pivot Trade and the June Camber Trade.

47.    If, following DBSI's sale in June 2007 of the Pivot ARS and Camber ARS to Northeast pursuant to the Pivot PPM and the Camber PPM, Northeast subsequently sold to or arranged for Xethanol to acquire or purchase the Pivot ARS and Camber ARS, and Xethanol was not a QIB, then Northeast breached its written representations as to the June Pivot Trade and the June Camber Trade, respectively.

11

48.    Should it be established that Xethanol is not a QIB, and the Third-Party

Plaintiffs are directly liable to Xethanol for damages, then the Third-Party Plaintiffs have

suffered damages in an amount to be determined at trial, as a direct, proximate and actual

result of Northeast's breach of its representations in connection with the June Pivot Trade and

June Camber Trade and the detrimental, reasonable reliance by the Third-Party Plaintiffs on

such written representations.

## PRAYER FOR RELIEF

WHEREFORE, the Third-Party Plaintiffs respectfully request that the Court:

A.    Dismiss the Amended Complaint in the Underlying Action with prejudice;

B.    In the alternative, award the Third-Party Plaintiffs a judgment against

Northeast, for all or part of any judgment or verdict or compromise rendered against DBSI,

Pivot Master Trust and/or Camber Master Trust in the Underlying Action;

C.    Award the Third-Party Plaintiffs their attorneys' fees and costs incurred in the

Underlying Action and in connection with this Third-Party Complaint; and

D.    Grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 15, 2008

                               Duval & Stachenfeld LLP
                               Attorneys for Third-Party Plaintiffs
                               Deutsche Bank Securities Inc., Pivot
                               Master Trust and Camber Master Trust

By:    Allan N. Taffet, Esq. (AT-5181)
                               300 East 42nd Street
                               New York, New York 10017
                               Tel. No.: (212) 883-1700